IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

─────────────

**IN RE THE MARRIAGE OF:**

**SANDRA HOWELL,**
*Petitioner/Appellee,*

*and*

**JOHN HOWELL,**
*Respondent/Appellant.*

─────────────

No. CV-15-0030-PR
Filed December 2, 2015

─────────────

Appeal from the Superior Court in Pima County
The Honorable Danelle B. Liwski, Judge
No. D78235
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Division Two
2 CA-CV 2014-0112
Filed Dec. 18, 2014
**VACATED**

─────────────

COUNSEL:

Charles W. Wirken (argued), Gust Rosenfeld PLC, Phoenix, Attorney for
Sandra Howell

Barry G. Nelson, Law Office of Barry Nelson, Cortaro; and Keith Berkshire
(argued), Maxwell Mahoney, Berkshire Law Office, PLLC, Phoenix,
Attorneys for John Howell

─────────────

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF
JUSTICE BALES, VICE CHIEF JUSTICE PELANDER and JUSTICES
BRUTINEL and BERCH (RETIRED) joined.

JUSTICE TIMMER, opinion of the Court:

¶1       Federal law prohibits courts in marital dissolution proceedings from dividing any portion of military retirement pay ("MRP") waived by a retired veteran to receive service-related disability benefits. In 2010, the Arizona Legislature enacted A.R.S. § 25-318.01 to prohibit courts from "making up" for the resulting reduction in MRP by awarding additional assets to the non-military ex-spouse. The issue before us is whether federal law or § 25–318.01 prohibits courts from fashioning such relief when the veteran elects to waive retirement pay after the court has awarded the ex-spouse a share of MRP in a decree entered before 2010. We hold that neither federal law nor § 25-318.01 precludes such an order.

## I. BACKGROUND

¶2       John Howell and Sandra Howell divorced in 1991. Pursuant to the parties' agreement, the dissolution decree provides that "[Sandra] is entitled to and is awarded as her sole and separate property FIFTY PERCENT (50%) of [John's] military retirement when it begins through a direct pay order." John retired from the Air Force in 1992 after a twenty-year career, and the parties began receiving MRP the next year.

¶3       In 2005, the Department of Veterans Affairs ("VA") approved John's claim that degenerative joint disease in his shoulder directly related to his military service. The VA assigned him a twenty percent disability rating to reflect the extent of his impairment for civilian employment. *See* 38 C.F.R. § 4.1 (explaining the rating system). He qualified for monthly, tax-exempt VA disability payments, which increased yearly. *See* 38 U.S.C. § 5301(a) (bestowing tax-exempt status). To prevent "double dipping," *Mansell v. Mansell*, 490 U.S. 581, 583 (1989), a veteran who receives MRP cannot collect VA disability benefits unless the veteran waives an equivalent amount of MRP (a "VA waiver"), *see* 38 U.S.C. §§ 5304–5305. John elected a VA waiver that was effective from July 1, 2004, the day after he filed his claim with the VA.

¶4       As a result of the VA waiver, the Defense Finance and Accounting Service ("DFAS"), which administers MRP, reduced monthly payments to both John and Sandra, and John began collecting VA disability benefits. For example, John's gross MRP in October 2013 was $1,474. DFAS subtracted the VA waiver amount of $255 to calculate $1,219 in disposable pay and then paid John and Sandra $609.50 each. Simultaneously, the VA

paid John $255 in disability benefits. But for the VA waiver, Sandra would have received an additional $127.50 per month.

¶5 In 2013, Sandra filed a motion to enforce the decree's division of MRP and also sought judgment against John for an arrearage amount equaling the reductions in her share of MRP after the VA waiver. John moved to dismiss the request, arguing that A.R.S. § 25-318.01 barred the family court from requiring John to indemnify Sandra for the reduction in her share of MRP. The court granted Sandra's motion, ruling that she had a vested property right in fifty percent of the MRP, and neither John's election nor § 25-318.01 could deprive her of this right. After an evidentiary hearing, the court awarded Sandra $3,813 in MRP arrearages incurred after December 1, 2011, but found that the equitable doctrine of laches prevented her from recovering earlier arrearages (the "2014 Order"). It also ruled that "[John] is responsible for ensuring [Sandra] receive[s] her full 50% of the military retirement without regard for the disability."

¶6 The court of appeals affirmed but for a different reason. *In re the Marriage of Howell*, 2 CA-CV 2014-0112 (Ariz. App. Dec. 18, 2014) (mem. decision). It held that § 25-318.01, by its terms, does not apply to post-decree enforcement proceedings, such as the one Sandra initiated, and the family court therefore correctly refused to apply the statute. *Id*. at 4–5 ¶¶ 8–9. Sandra did not appeal the family court's laches ruling.

¶7 We granted review because the interpretation of § 25-318.01 is a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II. DISCUSSION

### A. Federal preemption

¶8 John argues that, regardless of the applicability of § 25-318.01, the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 ("USFSPA"), and *Mansell*, 490 U.S. at 583, preempt the family court's authority to order John to indemnify Sandra for the reduction of her MRP share. Sandra responds, and the court of appeals agreed, that John waived this argument by raising it for the first time on appeal.

¶9        Although generally we refuse to consider arguments newly raised on appeal, this is a prudential rule, and we have made exceptions to consider issues of public importance or that are likely to recur. *Estate of DeSela v. Prescott Unified School Dist. No. 1*, 226 Ariz. 387, 389 ¶ 8, 249 P.3d 767, 769 (2011). Such reasons exist here. Also, the federal preemption issue is a legal one and the parties have fully briefed it. For these reasons, we consider John's arguments.

¶10        The United States Supreme Court and Congress have each addressed whether state courts can divide MRP and disability benefits in dissolution proceedings. In 1981, the Court held that federal law precludes a state court from dividing MRP because doing so would contradict Congress's intent that veterans have "personal entitlement" to such benefits. *McCarty v. McCarty*, 453 U.S. 210, 223–24 (1981). In response to *McCarty*, Congress enacted the USFSPA, which allows states to treat "disposable retired or retainer pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1); *see also Edsall v. Superior Court*, 143 Ariz. 240, 241–42, 693 P.2d 895, 896–97 (1984) (noting that the USFSPA made MRP subject to Arizona's community property laws). A few years later, the Court in *Mansell* clarified that although the USFSPA permits state courts to divide disposable MRP in a marital dissolution proceeding, it prohibits them from dividing MRP that has been waived to receive disability benefits. *Mansell*, 490 U.S. at 589.

¶11        In the years following *Mansell*, our court of appeals has several times considered how the family court should proceed when a veteran elects a VA waiver to receive disability benefits *after* entry of a dissolution decree, thereby reducing the ex-spouse's share of previously awarded MRP. In *Harris v. Harris*, 195 Ariz. 559, 562 ¶ 13, 991 P.2d 262, 265 (App. 1999), for example, the court held that *Mansell* does not bar the family court from ordering the veteran to reimburse the ex-spouse for a reduced share of MRP. The court of appeals reached similar conclusions in other cases. *See Danielson v. Evans*, 201 Ariz. 401, 407 ¶ 19, 36 P.3d 749, 755 (App. 2001); *In re Marriage of Gaddis*, 191 Ariz. 467, 469–70, 957 P.2d 1010, 1012–13 (App. 1997). Courts in other jurisdictions have divided on the issue. *See* Mark E. Sullivan & Charles R. Raphun, *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension*, 24 J. Am. Acad. Matrim. Law 147, 158 (2011) ("The large majority of states allow a judge to use equitable remedies to prevent a retiree from effecting a unilateral

reduction of [MRP] granted to the other spouse in the settlement or divorce decree."). *But see Mallard v. Burkart*, 95 So. 3d 1264, 1271 (Miss. 2012) (disagreeing that a clear majority viewpoint exists).

¶12 John argues that the *Harris* line of cases, and the family court here, crafted an equitable remedy barred by the USFSPA and *Mansell*. He quotes *Mansell*'s pronouncement that "the [USFSPA] does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits," 490 U.S. at 594–95, and contends that this proscription also applies to post-decree modification proceedings.

¶13 We agree that the family court cannot divide MRP that has been waived to obtain disability benefits either at the time of the decree or thereafter. But unlike the situation in *Mansell*, that did not occur here. Sandra was awarded fifty percent of the MRP years before John unilaterally elected to receive disability pay in lieu of a portion of the MRP. The 2014 Order did not divide the MRP subject to the VA waiver, order John to rescind the waiver, or direct him to pay any amount to Sandra from his disability pay. Under these circumstances, the family court did not violate the USFSPA or *Mansell* because it did not treat the MRP subject to the VA waiver as divisible property.

¶14 Although requiring John to reimburse Sandra diminishes the overall income increase he received when he elected the VA waiver (he retains the tax benefits of disability payments), we are not persuaded that the USFSPA prohibits this result. As the *Mansell* Court recognized, "[b]ecause domestic relations are preeminently matters of state law . . . Congress, when it passes general legislation, rarely intends to displace state authority in this area." *Mansell*, 490 U.S. at 587. The Court will not find federal preemption, therefore, "absent evidence that it is 'positively required by direct enactment.'" *Id.* (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)).

¶15 Nothing in the USFSPA directly prohibits a state court from ordering a veteran who makes a post-decree VA waiver to reimburse the ex-spouse for reducing his or her share of MRP. Absent such direct prohibition, we decline to find federal preemption.

## B. Applicability of A.R.S. § 25-318.01

### 1. Enforcement versus modification

¶16        John argues that the court of appeals evaded the plain language of § 25-318.01 by characterizing the 2014 Order as "enforcing" the dissolution decree rather than as "modifying" it to require indemnification. Section 25-318.01 provides:

> In making a disposition of property pursuant to § 25-318 or § 25-327, a court shall not do any of the following:
>
> 1.        Consider any federal disability benefits awarded to a veteran for service-connected disabilities pursuant to 10 United States Code section 1413a or 38 United States Code chapter 11.
>
> 2.        Indemnify the veteran's spouse or former spouse for any prejudgment or postjudgment waiver or reduction in military retired or retainer pay related to the receipt of the disability benefits.
>
> 3.        Award any other income or property of the veteran to the veteran's spouse or former spouse for any prejudgment or postjudgment waiver or reduction in military retired or retainer pay related to the receipt of the disability benefits.

*See also* A.R.S. § 25-530(A) ("In determining whether to award spousal maintenance or the amount of any award of spousal maintenance to a requesting party, the court shall not consider any federal disability benefits awarded to the other spouse for service-connected disabilities pursuant to 10 United States Code section 1413a or 38 United States Code chapter 11.").

¶17        By its express language, § 25-318.01 applies only to property dispositions made pursuant to §§ 25-318 and -327.  Section 25-318 governs the division of property in legal separation or marriage dissolution proceedings, while § 25-327 applies when a party seeks to revoke or modify a previously ordered division of property.  But nothing in § 25-318.01 restricts the family court's ability to enforce a disposition order. *Cf. In re Marriage of Dougall*, 234 Ariz. 2, 8 ¶ 19, 316 P.3d 591, 597 (App. 2013)

(deciding that nothing in § 25-530 prevented the court from considering VA disability benefits in determining the payment of arrearages stemming from an existing spousal maintenance award).  The issue here is whether the family court modified the dissolution decree's property disposition terms pursuant to § 25-327, thereby triggering § 25-318.01, or merely enforced the decree.  Because resolution of this issue turns on both statutory interpretation and the 2014 Order's meaning, we conduct a de novo review. *See Danielson*, 201 Ariz. at 406 ¶ 13, 36 P.3d at 754.

**¶18**        The 2014 Order modifies rather than enforces the dissolution decree's property disposition terms, and § 25-318.01 therefore applies.  The decree awarded Sandra fifty percent of John's MRP, regardless of the amount, and DFAS paid her that percentage each month.  It was not necessary to "enforce" the decree as DFAS was honoring its terms.  Instead, Sandra sought to redress a changed circumstance:  John had reduced the MRP amount by electing a VA waiver.  Unable to order John to rescind election of a benefit bestowed by Congress, *see* U.S. Const. art. VI, cl. 2, the family court ordered John to pay Sandra for her reduced share of MRP. Because the decree did not require John to indemnify Sandra for her loss of MRP, the 2014 Order necessarily modified the original property disposition terms.  As a result, despite Sandra's request that the family court enforce the decree, the family court necessarily modified the initial property disposition terms pursuant to § 25-327, and § 25-318.01 therefore applies. Consequently, the court of appeals erred by holding that § 25-318.01's plain language makes its restrictions inapplicable here.  We therefore consider whether the family court properly refused to apply § 25-318.01 because to do so would have unconstitutionally deprived Sandra of a vested property right.

### 2. Vested property rights

**¶19**        Both parties acknowledge that Sandra obtained a vested property right in her share of MRP when the family court entered the decree in 1991. *Cf. Koelsch v. Koelsch*, 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986) ("When the community property is divided at dissolution . . . each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court . . . [and] a former spouse loses any interest in and control over that separate property.").  They differ, however, on the scope of that right.  John contends that Sandra has a vested right in fifty percent of whatever amount of MRP is paid by DFAS each

month.   He characterizes her interest in the precise amount of those payments as merely expectant and argues that § 25-318.01 therefore can apply to diminish that interest.  Sandra counters that she possesses a vested property right in the amount of her MRP share as calculated by DFAS and unencumbered by any adjustments unilaterally initiated by John.   She contends that neither John's election of the VA waiver nor subsequent legislation could affect that right without depriving her of a vested property right.

**¶20**        We begin by examining the categories of property rights.  A property right becomes vested "when every event has occurred which needs to occur to make the implementation of the right a certainty."  *Aranda v. Indus. Comm'n of Ariz.*, 198 Ariz. 467, 471 ¶ 18, 11 P.3d 1006, 1010 (2000).  The right is "actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust."  *Id.* (quoting *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 200 ¶ 15, 972 P.2d 179, 184 (1999)).  By contrast, a right is expectant when it depends on the continued existence of present circumstances "until the happening of some future event."  *Id.* at 471–72 ¶ 21, 11 P.3d at 1010–11 (citation omitted).  A contingent right is one that comes into existence only if a specified event or condition occurs.  *Id.* at 472 ¶ 21, 11 P.3d at 1011.

**¶21**        In this case, Sandra had a vested right to receive future distributions of her share of MRP unencumbered by any adjustments initiated by John.  MRP is a form of deferred compensation.  *Van Loan v. Van Loan*, 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977).  Thus, the MRP earned during the parties' marriage belonged to the community and was divisible upon dissolution of the marriage.  *See id.*  After the dissolution decree became final and the corresponding qualified domestic relations order issued, nothing more needed to occur to entitle Sandra to fifty percent of the MRP; it had already been earned.  *See* 10 U.S.C. § 1408(d) (requiring payment of disposable MRP share to ex-spouse upon receipt of court order).  Additionally, both parties' shares, which were subject to equal cost-of-living and other adjustments, could be precisely calculated by DFAS each month and did not depend on any future event or contingency.  *See* 10 U.S.C. §§ 1401–1414 (establishing methods for computing monthly MRP payments); *see also Koelsch*, 148 Ariz. at 184 n.9, 713 P.2d at 1242 n.9 (characterizing cost-of-living increases to pension benefits attributable to the marital community as a community asset).  Under these circumstances, the decree created an immediate right to future payment of fifty percent of

the MRP, including cost-of-living increases, earned during the marriage as calculated by DFAS. That amount vested as Sandra's property right and is not merely expectant.

¶22        One spouse cannot invoke a condition solely within his or her control to defeat the community interest of the other spouse. *Koelsch*, 148 Ariz. at 181, 713 P.2d at 1239. By electing the VA waiver, John did precisely that by essentially converting part of Sandra's MRP share. The 2014 Order restored Sandra's share of community assets by ordering John to "make up" the reduction and pay arrearages. The remaining issue here is whether the family court erred by ruling that § 25-318.01 could not prohibit indemnification in these circumstances.

¶23        Once a property right vests, the due process guarantee of our constitution, Ariz. Const. art. 2, § 4, prohibits application of legislation that "[would] disturb vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15, 972 P.2d at 189; *see also Aranda*, 198 Ariz. at 471 ¶ 16, 11 P.3d at 1010 (to same effect). John concedes that "if Sandra [had] obtained relief prior to 2010, newly enacted A.R.S. § 25-318.01 could not be retroactively applied to change the result." He argues, however, that because Sandra sought relief after 2010, application of the statute would be prospective and therefore constitutional.

¶24        John's argument is unpersuasive. Sandra sought relief for the reduction of her MRP share, which vested as a property right in 1991. Regardless of the timing of her request, application of § 25-318.01 to prohibit the court from remedying the deprivation would diminish Sandra's vested property right in violation of the due process guarantee. Consequently, the family court correctly refused to apply § 25-318.01 to these facts.

### III. CONCLUSION

¶25        We hold that federal law does not preempt the family court's authority to order a retired veteran to indemnify an ex-spouse for a reduction in MRP caused by a post-decree waiver of MRP made to obtain disability benefits. We also hold that A.R.S. § 25-318.01 cannot be applied to prohibit the court from entering an indemnification order in these circumstances if the ex-spouse's share of MRP vested as a property right

before the statute's enactment.  Because Sandra did not appeal the family court's application of laches in awarding arrearages dating only from 2011, we do not disturb that ruling.  We vacate the court of appeals' decision and affirm the family court's judgment.