IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

IN RE THE MARRIAGE OF
**SHELLY RAE BARRON,**
*Petitioner/Appellee,*

*v.*

**PAUL ROGER BARRON,**
*Respondent/Appellant.*

No. CV-18-0234-PR
Filed May 21, 2019

Appeal from the Superior Court in Yuma County
The Honorable Stephen J. Rouff, Judge Pro Tempore
No. S1400DO201501132
**VACATED IN PART AND REMANDED**

Opinion of the Court of Appeals
Division One
796 Ariz. Adv. Rep. 31
Filed July 31, 2018
**VACATED IN PART**

COUNSEL:

Mary K. Boyte Henderson (argued), Mary Katherine Boyte, P.C., Yuma,
Attorney for Shelly Rae Barron

S. Alan Cook, S. Alan Cook, P.C., Phoenix; Keith Berkshire (argued), Kristi
Reardon, Erica Gadberry, Berkshire Law Office, PLLC, Tempe; Richard G.
Maxon, Tempe; Theodore C. Jarvi, Tempe, Attorneys for Paul Roger Barron

CHIEF JUSTICE BALES authored the opinion of the Court, in which VICE
CHIEF JUSTICE BRUTINEL and JUSTICES TIMMER, BOLICK, GOULD,
LOPEZ, and PELANDER (RETIRED) joined.

CHIEF JUSTICE BALES, opinion of the Court:

¶1       In this divorce case, we hold that federal law does not permit a state court to order a military spouse to pay the equivalent of military retirement benefits to a former spouse if the military spouse continues to work past an eligible retirement date.

**I.**

¶2       Paul Barron ("Husband") and Shelly Rae Barron ("Wife") married in 2004, when Husband was an active duty member of the United States Marine Corps. When they divorced in 2017, Husband was still an active duty service member. As part of the dissolution proceedings, the superior court found that Husband could retire in 2023 after twenty years of military service and divided the parties' assets, including Husband's military retirement pay ("MRP"), assuming Husband would apply for and collect retirement as soon as he became eligible.

¶3       The dissolution decree provided that Wife was entitled to 29% of the MRP. The trial judge also ordered Husband, if he chose to work beyond his retirement-eligibility date, to begin making payments to Wife equivalent to what she would have received as her share of the MRP had he retired.

¶4       On appeal, Husband argued that the court improperly ordered him to indemnify Wife if he chose to remain in the military on active duty status. *Barron v. Barron*, 796 Ariz. Adv. Rep. 31, 35 ¶ 24 (Ariz. App. July 31, 2018). The court of appeals agreed and reversed, reasoning that federal law precludes such indemnification. *Id* at 37 ¶ 30.

¶5       We granted review because division of military retirement benefits is a recurring legal issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

**II.**

¶6       Military members may be eligible to retire and receive MRP after serving for a certain length of time, typically twenty years or more. *See Howell v. Howell*, 137 S. Ct. 1400, 1402-03 (2017). Although some states had divided MRP upon divorce, in 1981 the United States Supreme Court

held that such orders were preempted because they created a "conflict between the terms of the federal retirement statutes and the [state] community property right." *McCarty v. McCarty*, 453 U.S. 210, 232, 235 (1981).

¶7        In response, Congress passed the Uniformed Services Former Spouses Protection Act ("USFSPA"), 10 U.S.C. § 1408, which provides the "precise and limited" authority to treat certain military retirement benefits as divisible property upon divorce. *See Mansell v. Mansell*, 490 U.S. 581, 588-89 (1989). The USFSPA grants states the authority to divide "disposable retired pay" in divorce proceedings. 10 U.S.C. § 1408(c). Thus, since the enactment of the USFSPA, state courts have been able "to treat disposable retired pay as community property." *Mansell*, 490 U.S. at 589.

¶8        Even before passage of the USFSPA, Arizona generally treated military retirement assets as community property, divisible upon divorce, like any other retirement asset. *See, e.g.*, *Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977). Since the USFSPA's enactment, Arizona has chosen to treat MRP as community property. *See Edsall v. Superior Court*, 143 Ariz. 240, 242 (1984).

¶9        Wife argues that the indemnification order in this case was proper under *Koelsch v. Koelsch*, 148 Ariz. 176 (1986). In that case, we considered "how and when a non-employee spouse's community property interest in an employee spouse's matured retirement benefit plan is to be paid when the employee wants to continue working, thus delaying receipt of the retirement benefits." *Id.* at 180. As applied to benefits that are "matured and payable," *id.* at 183, we held that "the court can order that the non-employee spouse be paid a monthly amount equal to his or her share of the benefit which would be received if the employee spouse were to retire," *id.* at 185.

¶10        Although we treat MRP as community property, and *Koelsch* permits an indemnification order under state law for public retirement benefits when a spouse elects to keep working instead of retiring, Arizona may only divide MRP to the extent permitted by federal law. *See Howell*, 137 S. Ct. at 1403-04. Thus, we must first examine the authority granted by Congress.

**¶11** On that issue, *Howell* is instructive. That case involved a former spouse whose MRP payments were reduced years after the dissolution decree because the retired military spouse elected to waive MRP to receive disability benefits. *Id.* at 1402. The trial court ordered the military spouse to indemnify the former spouse for her vested rights in the MRP. *In re Marriage of Howell*, 238 Ariz. 407, 408-09 ¶¶ 1-5 (2015), *rev'd*, *Howell*, 137 S. Ct. 1400. Relying on the USFSPA and United States Supreme Court precedent, we concluded that although a trial court could not, at the time of the decree or thereafter, divide MRP that a military spouse has waived to obtain disability benefits, the court could require the military member to reimburse his former spouse for a post-decree reduction in the benefits she received as a result of his electing to receive disability benefits in lieu of MRP. *Id.* at 409-10 ¶¶ 10-15.

**¶12** The Supreme Court reversed. *Howell*, 137 S. Ct. at 1406. Like us, the Court recognized that, in allowing states to treat MRP as community property, "Congress excluded from its grant of authority the disability-related waived portion of military retirement pay." *Id.* at 1404. The Court also noted that it had previously held that "federal law completely pre-empts the States from treating waived military retirement pay as divisible community property," which was "just what the Arizona family court did here." *Id.* at 1405. Although the divorce decree gave the non-military spouse a right to half of MRP, the Court held that such an interest "is, at most, contingent, depending for its amount on a subsequent condition: [the military spouse's] possible waiver of that pay." *Id.* at 1405-06. Thus, under *Howell*, a state court can divide MRP only to the extent it is disposable retired pay, as defined by § 1408(a)(4)(A), and a state court may not enter orders that "displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress." 137 S. Ct. at 1406.

**¶13** The grant of authority to divide MRP under the USFSPA "does not authorize any court to order a member to apply for retirement or retire at a particular time in order to effectuate any payment under this section." § 1408(c)(3). Here, the court of appeals relied on this provision to hold that a court cannot order a service member to indemnify the non-military former spouse if the service member chooses to work past an eligible retirement date. *See Barron*, 796 Ariz. Adv. Rep. at 36 ¶ 27. The court also read *Howell* as prohibiting the equitable remedy under *Koelsch* of ordering indemnification payments. *Id.* at 36–37 ¶¶ 28–30.

4

**¶14** We agree with the court of appeals' observation that § 1408(c)(3) would have little effect if a court, instead of ordering a service member to retire, could simply order a member to begin making payments as if he or she had retired. However, we focus our attention on the definition of "disposable retired pay," which is the relevant benefit that Congress has authorized state courts to divide as part of dissolution proceedings. Federal law does not permit states to divide MRP but rather grants them the authority to "treat *disposable retired pay*" as community property. § 1408(c)(1) (emphasis added). "Disposable retired pay," in turn, is defined as "the total monthly retired pay to which a member is *entitled*." § 1408(a)(4)(A) (emphasis added).

**¶15** We read "entitled" to mean a member has applied and been approved for military retirement benefits. Although Congress did not define "entitled," our interpretation effectuates its intent in passing the USFSPA. The legislative history reveals Congress's intent that a military member must retire to become "entitled" to MRP. *See* S. Rep. No. 97-502, at 17 (1982) ("[I]t is not enough that the member has sufficient years of service so that the member could, if the member so desired, retire . . . . Rather, the member must have actually retired from the uniformed service or entered some other status in which the member is actually entitled to receive retired or retainer pay."). The Department of Defense's regulations also support this interpretation of "entitled." *See* 7B Department of Defense, DoD 7000.14-R, *Military Pay Policy and Procedures – Retired Pay* 29-6 (2018) (defining entitlement as "the legal right of a military member to receive military retired pay" and differentiating "members who actually receive retired pay" from "those who qualify by completing the required years of service").

**¶16** Moreover, the grant of authority for states to treat disposable retired pay as community property only applies to "disposable retired pay *payable* to a member." § 1408(c)(1) (emphasis added). Unlike the employee spouse's retirement plan in *Koelsch*, military retirement based on years of service is discretionary, and thus a member's interest in MRP is neither vested nor mature until the member retires and benefits are approved. *See, e.g.*, 10 U.S.C. § 8323 (granting permissive, not mandatory, authority to retire an officer after twenty years of service). Pay that may never be received, and the grant of which is discretionary, is not "payable" to a member. To the same effect, the legislative history states that "the provisions of section 1408 only will permit payments [to a former spouse]

to be made from a member's or former member's 'retired or retainer pay,'" S. Rep. No. 97-502, at 15, rather than from active duty pay or prospective retirement pay.

¶17 Finally, § 1408(c)(3) would be meaningless if "entitled" means "eligible" as Wife argues. If a member were "entitled" to disposable retired pay before retiring, then Congress would have had no reason to explicitly note that courts cannot force retirement in order to effectuate payments under the USFSPA. Although the USFSPA contemplates that a court may order the division of disposable retired pay in advance of retirement, the statutory scheme does not contemplate implementation of that order until the member actually retires. *See* § 1408(d)(1) ("In the case of a member not entitled to receive retired pay on the date of the effective service of the court order, such payments shall begin not later than 90 days after the date on which the member first becomes entitled to receive retired pay.").

¶18 Because the USFSPA only permits state courts to divide "disposable retired pay," and no entitlement to MRP exists until the member retires and is approved to receive such benefits, state courts cannot order service members to make MRP-based payments to former spouses before retirement.

## III.

¶19 Here, at the time of the dissolution, Husband had not applied for, had not been approved to receive, and was not receiving MRP. The dissolution decree provided for a payment to Wife of her share of Husband's MRP starting when Husband purportedly would be eligible to retire. This part of the decree was in error.

¶20 Before a military spouse retires, a court remains free to enter orders awarding a former spouse his or her share of MRP, but such orders cannot require payment until the military spouse retires. *See, e.g.*, § 1408(a)(4)(B) (freezing benefits for decrees finalized before retirement); § 1408(d)(1) (contemplating orders served on the Secretary before entitled to payment). Notably, in *Howell*, the United States Supreme Court observed that a state "remains free to take account of the contingency that some military retirement pay might be waived, or . . . take account of reductions in value when it calculates or recalculates the need for spousal support." *Howell*, 137 S. Ct. at 1406. We express no view, however, on whether or how

the court on remand should make any adjustments based on MRP-related contingencies.

**¶21**        For the foregoing reasons, we vacate paragraphs 24 through 30 of the court of appeals' opinion, we vacate the portion of the decree providing for a *Koelsch* order, and we remand the case to the superior court for further proceedings. We deny Wife's request for attorney fees and grant Husband's request for costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.