NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

HERIBERTO PERALTA, *Petitioner/Appellant*,

*v.*

BERTHA ALICIA PERALTA, *Respondent/Appellee*.

No. 1 CA-CV 19-0065 FC
FILED 12-24-2019

Appeal from the Superior Court in Yuma County
No. S1400DO201601068
The Honorable Levi Gunderson, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Bishop Law Office, P.C., Phoenix
By Daniel P. Beeks
*Counsel for Petitioner/Appellant*

S. Alan Cook, P.C., Phoenix
By S. Alan Cook
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1        Heriberto Peralta ("Father") appeals various aspects of the dissolution decree ending his marriage to Bertha Alicia Peralta ("Mother"). For the following reasons, we affirm the legal decision-making and parenting time orders, but vacate the child support orders and remand for reconsideration in light of Father's correct 2017 income. We also vacate the court's award of attorneys' fees to Mother, and remand for reconsideration as to the unreasonableness of Father's conduct during the litigation.

## FACTS AND PROCEDURAL HISTORY

¶2        The parties married in 2010 and have one child, who was born in 2013. Both parties worked for the United States Border Patrol. In September 2017, Father was terminated for lack of candor after he admitted making a false statement to the Yuma Police in connection with a domestic violence incident.

¶3        In August 2016, Father filed a petition for dissolution and a motion for temporary orders without notice seeking sole legal decision-making authority. Father alleged that Mother committed three separate acts of domestic violence. The superior court granted Father temporary sole legal decision-making authority. At the first temporary orders hearing on September 1, 2016, the court affirmed the award of sole legal decision-making authority to Father and granted Mother unsupervised parenting time.

¶4        Father's attorney withdrew shortly before the two-day trial. On what was scheduled to be the first day of trial, Father successfully moved for a continuance. In light of the continuance, Mother requested additional temporary orders, and the court held a third temporary orders

hearing on December 11, 2017.[1]  After taking evidence, the court denied Mother's request to modify the temporary orders hearing, and the matter proceeded to trial on March 9, 2018.

**¶5**          Following the trial, the superior court allocated the parties' community property and debts, awarded sole legal decision-making authority to Mother, granted Father equal parenting time, entered past and current child support orders, and awarded Mother a portion of her attorneys' fees.  Father filed a motion for new trial from the final decree.

**¶6**          The superior court granted Father's motion for new trial, in part, on issues related to Father's income and child support.  Following the new trial on November 16, 2018, the court affirmed its prior findings regarding Father's income and child support.  Father filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (2), and (5)(a).

## ANALYSIS

### I.          *Alleged Violation of Father's Due Process Rights*

**¶7**          Father contends he was denied due process because the superior court initially set the matter for a two-day trial, then reduced it to one day after his counsel withdrew.  Due process claims are issues of law, which we review *de novo*. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999).

**¶8**          Due process requires that the court "afford the parties 'an opportunity to be heard at a meaningful time and in a meaningful manner.'"  *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation omitted).  Although the original trial was scheduled for two days, the superior court explained that a one-day trial was sufficient in light of the multiple pretrial hearings and, in particular, its familiarity with the domestic violence issues.  At two prior evidentiary hearings, the court heard testimony about the domestic violence allegations, Father's income, and the parties' ability to co-parent.  As he did in his motion for new trial, Father argues that, given the limited trial time, he only had seven minutes to testify.

---

[1]      The court held a second temporary orders hearing on May 31, 2017, to address Mother's motion for temporary orders regarding summer vacation and travel to Mexico.

¶9 The parties received equal trial time. Father, however, chose to call Mother and three other witnesses before testifying himself. As noted in its subsequent detailed ruling, the superior court frequently reminded Father that his testimony was important and to reserve sufficient time to present his own testimony. Instead, Father spent significant time questioning Mother about the same domestic violence allegations raised in the prior hearings. Father's inefficient use of time does not constitute a due process violation.[2] *See id.*, at 469, ¶ 22.

¶10 Father also suggests he was prejudiced because the superior court deducted the time it took to renumber Father's trial exhibits from his allotted time. According to the transcript, the court took a ten-minute recess to address the issues with the exhibits. This delay was a result of Father failing to list the exhibits from an earlier hearing as trial exhibits. Thus, it was not unfair for the court to attribute to Father the time needed to renumber his earlier exhibits.

¶11 Finally, when notified that the trial would be one day instead of two, neither party objected or expressed concern that one day was insufficient. Likewise, at trial, Father did not object to his allotted time, and at the end of his case, he did not request additional time or make an offer of proof regarding the additional evidence he would have presented. Under these circumstances, we find no denial of due process. *See Nicaise v. Sundaram*, 244 Ariz. 272, 277, ¶ 15 (App. 2018) (finding no due process violation where a party made a strategic decision regarding use of trial time and then failed to request additional time or make a proffer of evidence), *vacated in part on other grounds*, 245 Ariz. 566, 569, ¶ 17 (2019).

II. *Awarding Sole Legal Decision-Making Authority to Mother*

¶12 The superior court awarded sole legal decision-making authority to Mother. In denying Father's motion for new trial on this issue, the court provided a thorough discussion of the evidence of the mutual acts of domestic violence that constituted a large portion of the pretrial hearings and the trial.

¶13 We review the superior court's legal decision-making and parenting time orders for an abuse of discretion. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). We accept the court's findings of fact absent clear error. *Id.* Courts must consider the child's best interest in deciding

---

[2] Father was able to present additional evidence regarding his income during the new trial as it related to child support issues.

legal decision-making and parenting time. A.R.S. § 25-403. One of the factors relevant to determining the child's best interest is whether there has been domestic violence. A.R.S. § 25-403(A)(8) (citing § 25-403.03). "If the court finds either the existence of significant domestic violence or a significant history of domestic violence, [§ 25-403.03(A)] precludes an award of joint legal decision-making authority." *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 11 (App. 2019). Here, the court found a significant history of mutual acts of domestic violence.

**¶14** Father argues the court improperly considered domestic violence in which he was the perpetrator because Mother did not raise this issue in her pretrial statement. The pretrial statement controls the course of the litigation and is "intended to avoid unfair surprise at trial." *Bobrow v. Bobrow*, 241 Ariz. 592, 598, ¶ 28 (App. 2017) (citations omitted).

**¶15** Here, Mother's allegations of Father perpetrating acts of domestic violence predate the pretrial statements and were addressed at two of the temporary orders hearings. Father also failed to object when Mother testified at trial regarding his acts of domestic violence. Further, the court stated that evidence of Father's domestic violence was relevant because "both sides" were claiming to be victims of domestic violence. Father even called his first wife to testify that he was not abusive during their marriage. Father was not unfairly surprised by evidence of mutual domestic violence at trial.

**¶16** More importantly, this evidence was highly relevant to determining the child's best interest. *See Nold v. Nold*, 232 Ariz. 270, 273, ¶ 10 (App. 2013) (rejecting a waiver argument and holding that "the best interests of the child trump the consequences ordinarily imposed for violations of the rules"); *see also* A.R.S. §§ 25-403(A)(8), -403.03. Therefore, the court properly considered the evidence of mutual acts of domestic violence.

**¶17** Father next argues the superior court did not give sufficient weight to Mother's acts of domestic violence and improperly considered that she was not prosecuted for the March 2014 domestic violence incident. The court did not minimize the seriousness of Mother drawing a weapon but considered the parties' overall history of mutual acts of domestic violence and, when balanced against the other factors relevant to the child's best interest, decided it was in the child's best interest to award sole legal decision-making authority to Mother. Father asks this court to balance these factors differently, but "[w]e must give due regard to the [superior] court's opportunity to judge the credibility of the witnesses" and do not

reweigh conflicting evidence on appeal. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Regarding the lack of prosecution, the court also considered that the prosecutor similarly declined to charge Father for his actions in the same incident.

¶18 Finally, § 25-403.03(D) creates a presumption that it is not in the child's best interest to award sole legal decision-making authority to a parent who has committed an act of domestic violence, but specifically states that the presumption "does not apply if both parents have committed an act of domestic violence." Father argues the superior court did not consider the relevant factors listed in § 25-403.03(E) when considering whether Mother rebutted this presumption. Because both parties committed domestic violence, the presumption did not apply. We find no error.

   III. *Child Support Issues*

     A. *The Superior Court Did Not Abuse Its Discretion by Attributing More Than Minimum Wage Earnings to Father.*

¶19 In calculating child support, the superior court issued three separate child support worksheets for these time periods: (1) September 1, 2016, through September 30, 2017, when Father had primary custody of the child and worked at Border Patrol; (2) October 1, 2017, through March 31, 2018, after Father was terminated from Border Patrol and had primary custody; and (3) from April 1, 2018, when the parties had equal parenting time. For the second and third worksheets, when Father was unemployed, the court attributed $4,654 per month income to Father, which the court found to be half of his previous earnings at Border Patrol. According to the court's calculations, Father earned $6,707 per month base salary, plus $2,600 per month in supplemental pay at Border Patrol.[3] The court granted Father's motion for new trial to reconsider the amount of income attributed to him but affirmed its finding that Father earned $2,600 per month in supplemental pay before being terminated from Border Patrol. After the new trial, the court explained, in great detail, why it concluded that Father has remained voluntarily unemployed since his termination and why attributing half his prior income was appropriate.

---

[3] Father's total income also includes military retirement pay and military disability income, but those amounts are not in dispute.

¶20 Father raises several arguments regarding the superior court's decision to attribute half his Border Patrol income in determining the child support obligation. Whether the court can attribute a higher income than the party earns is a question of law reviewed *de novo*, *Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 9 (App. 2009), but we review factual findings for clear error, *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010).

¶21 Father reasons that because his employment was terminated, his unemployment is not voluntary, and the court erred in attributing more than minimum wage. Child Support Guidelines § 5(E), A.R.S. § 25-320 Appendix ("Guidelines"), allows the court to attribute income up to earning capacity when a parent is unemployed or working below his or her full earning capacity "if the parent's earnings are reduced voluntarily and not for reasonable cause." *Little v. Little*, 193 Ariz. 518, 521, ¶ 6 (1999). The Guidelines give the court discretion to consider the reasons for the parent's unemployment. Guidelines § 5(E) ("If a parent is unemployed or working below full earning capacity, the court may consider the reasons."). According to Guidelines § 5(E), the court shall attribute *at least* minimum wage

> after considering the specific circumstances of the parents to the extent known. This includes such factors as the parents' assets, residence, employment and earnings history, job skills, educational attainment, literacy, age, health, criminal record and other employment barriers, and record of seeking work, as well as the local job market, the availability of employers willing to hire the parents, prevailing earnings level in the local community, and other relevant background factors in the case.

¶22 Thus, the Guidelines authorize the court to attribute more than minimum wage if the circumstances warrant. For example, in *Sherman v. Sherman*, 241 Ariz. 110, 112-13, ¶¶ 5, 12 (App. 2016), the father was unable to work because of a medical condition and not voluntarily unemployed. This court held, however, that it was within the court's discretion to attribute more than minimum wage but less than previous earning capacity to the father "despite his involuntary unemployment." *Id.* at 113, ¶ 12. The court may also consider a parent's effort or lack thereof in finding new employment. *See Patterson v. Patterson*, 102 Ariz. 410, 415 (1967) (refusing to reduce child support because the father was capable of working and his obligation to his children could not be diminished because he preferred to be idle rather than industrious or his own improprieties caused a diminution in his income).

¶23 Here, Father's termination may not have been "voluntary," but that was only one of the factors the superior court considered. The evidence supports the findings that Father had preferred status as an honorably discharged military veteran, a long work history including leadership responsibilities, and a wide range of employable skills, including being bilingual. The court properly considered Father's voluntary decision, after being turned down from three jobs, to not seek other work while awaiting the appeal of his termination. *See id.* After considering all these factors, the court was within its discretion to conclude that Father could earn more than minimum wage.

¶24 Father also argues the superior court abused its discretion because it attributed more than minimum wage to punish him for having lied to law enforcement. Father contends that this is contrary to the directive that "[t]he court may not attribute income to a person who is incarcerated, but may [consider] actual ability to pay." Guidelines § 5(E). We disagree. Father was not incarcerated, and the Guidelines also allow the court to consider all the reasons for the parent's unemployment. *Id.* We find no abuse of discretion.

¶25 The superior court attributed only half of Father's most recent earning capacity to account for the difficulty he may have in finding a comparable position as a result of his termination. Father contends this reduction was speculative and, therefore, an abuse of discretion. The case law does not support Father's contention that Mother must provide expert testimony from a vocational expert for the court to attribute income over minimum wage. The court has discretion to determine a parent's earning capacity based on that parent's education, work experience, and previous earning capacity. *See Taliaferro v. Taliaferro*, 188 Ariz. 333, 336-37 (App. 1996); *Williams v. Williams*, 166 Ariz. 260, 266 (App. 1990). We find no abuse of discretion.

> B. *The Evidence Does Not Support the Amount of Supplemental Pay Attributed.*

¶26 The superior court found Father earned $2,600 per month in supplemental income at Border Patrol from September 1, 2016, through September 30, 2017. Father argued in his motion for new trial that this was incorrect. The court relied on Father's 2016 financial affidavit, which stated that he earned $2,600 per month in supplemental pay and denied a new trial on this basis.

¶27 Father does not dispute his 2016 financial affidavit stated he earned $2,600 per month in supplemental pay, in addition to his regular Border Patrol income of $6,706. Father contends, however, the paystubs admitted at the new trial show he did not earn $2,600 per month in supplemental pay after July 24, 2016. Father testified that his opportunity to earn supplemental pay decreased significantly when he started working as a union representative rather than a field agent in August 2016, which was approximately the same time his supplemental pay hours were restricted for disciplinary reasons.

¶28 According to his paystubs, between July and October 2016, Father's "supplemental pay" was approximately $1,542 per month. But Father focuses only on the "supplemental pay" line of his paystub. Throughout 2016, Father received income in addition to his base pay, such as overtime, holiday leave, and "other leave." Some of this additional compensation continued in 2017. The court properly considered this additional compensation in determining Father's average monthly income.

¶29 We conclude, however, that the superior court should have corrected the child support worksheets when more detailed information was presented at the new trial. The monthly average of the year-to-date gross income stated on Father's October 15, 2016 paystub was $9,140 per month, which includes all forms of additional compensation.[4] Father did not include any 2016 paystubs for November or December. The monthly average of the yearly gross income stated on Father's last paystub from September 16, 2017, is approximately $7,600.[5] Mother did not dispute that Father earned an average monthly income of approximately $7,600 for 2017. Thus, the record does not support the court's finding that Father earned $9,307 *in 2017*.

¶30 As stated above, the superior court was within its discretion to attribute one-half of Father's previous income given the findings regarding the reasons for his unemployment. But the court must base the one-half reduction on the correct income amount. We vacate the child

---

[4] The gross year-to-date income was $86,834.06 as of October 15, 2016. Dividing this amount by 9.5 months results in an average gross monthly income of $9,140.43.

[5] The gross year-to-date income was $65,086.96, as of September 16, 2017. Dividing this amount by 8.5 months results in an average gross monthly income of $7,657.29.

support orders and remand for reconsideration based on Father's correct income.

### C. Attributing Child Care Costs Is Discretionary.

**¶31** The superior court did not include child care costs when calculating Father's child support obligation after October 1, 2017, because Father withdrew the child from preschool in September 2017. Father argues this was an abuse of discretion because the court attributed a full-time income and should, therefore, attribute the corresponding cost of child care under Guidelines § 5(E). We review child support awards for an abuse of discretion, but the court's interpretation of the Guidelines is a question of law we review *de novo*. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

**¶32** Guidelines § 5(E) states, "If income is attributed to the parent receiving child support, appropriate child care expenses may also be attributed." This is discretionary. *Engel*, 221 Ariz. at 511-12, ¶¶ 22, 25-28. The court in *Engel* noted that the Guidelines reflect a policy to allow attribution of hypothetical income and expenses, and that such attribution can affect the monthly child support obligation. The purpose of attributing hypothetical income and expenses is "to protect a working parent from paying a disproportionate amount of the total support obligation when the other parent has chosen not to earn income to the extent he or she is able." *Id.* at 511, ¶ 22. Attributing child care expenses increases the total child support obligation by a corresponding amount. *Id.* at 512, ¶ 28. When this attribution significantly increases what the employed spouse must pay, the result is contrary to what the Guidelines intended. *Id.*

**¶33** In this case, Father did not actually incur child care expenses after he withdrew the child from preschool when he lost his job. Thus, attributing hypothetical child care expenses while Father was unreasonably not looking for work, is contrary to the intent of the Guidelines. *Id.* Accordingly, the court did not abuse its discretion when it declined to attribute hypothetical full-time child care costs, particularly because the child was starting school in August 2018.

### IV. Property Allocation Issues

**¶34** The superior court awarded each party the debts associated with credit cards in his or her name, their own savings and retirement accounts, and various personal property. Mother was awarded the marital home, which had $45,000 in equity. The court denied Father's request to be reimbursed for the mortgage and maintenance expenses he paid for the

marital residence during the litigation. Because the allocation resulted in Father receiving $38,344 in debts and Mother having $43,664 in assets, Mother owed Father $41,004. After deducting Mother's $15,000 attorneys' fee award, the court entered a $26,004 equalization judgment in favor of Father. The court ordered that no interest shall accrue on the judgment as long as Mother made monthly payments of at least $400. The court denied Father's motion for new trial on the property allocation. We review the court's allocation of property for an abuse of discretion. *Hrudka v. Hrudka*, 186 Ariz. 84, 93 (App. 1995), *superseded by statute on other grounds as noted in Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 8 (App. 2014).

> *A.  The Superior Court Properly Denied Father's Reimbursement Claim.*

**¶35**     First, we find no abuse of discretion in denying Father's request for reimbursement for the mortgage and maintenance expenses he paid after filing the petition for dissolution. Father testified that he used the rental income from the marital residence to pay those expenses. Father did not provide a detailed accounting of the expenses he paid, so we cannot presume these expenses exceeded the rental income he received and did not share with Mother. Although Father had no obligation to pay these expenses with his separate, post-petition funds, *see Bobrow*, 241 Ariz. at 596, ¶ 19, on this record, denying his claim for reimbursement allocation was equitable because the court did not attribute rent as income to Father.

> *B.  The Superior Court Abused Its Discretion by Not Awarding Interest on the Equalization Judgment.*

**¶36**     Next, Father concedes that although the overall property and debt allocation was mathematically equal, the practical result was not fair and equitable because the court failed to award any interest on the equalization judgment unless Mother failed to pay on time, whereas Father has to pay interest on the community debts assigned to him. We agree. The court has no discretion to refuse to award interest under A.R.S. § 44-1201(B). *In re Estate of Miles*, 172 Ariz. 442, 445 (App. 1992). If Mother is not required to pay interest on the equalization judgment, Father is "forced to make an interest-free loan to [Mother]." *McCune v. McCune*, 120 Ariz. 402, 404 (App. 1978). Here, this is inequitable because the court assigned a significant portion of the community credit card debt to Father[6] and all of the equity

---

6     Mother contends that Father incurred all the credit card debt assigned to him. But the credit card statements show that there was

in the marital residence to Mother. Mother essentially concedes this point on appeal and notes that a more equitable result might have been to pay the equalization judgment in a lump sum.

¶37 Father's motion for new trial did not specifically raise the failure to award interest on the equalization judgment, but he objected to the overall allocation being unfair because, in part, he had to pay substantial interest on the credit card debt assigned to him. Generally, we do not consider arguments raised for the first time on appeal, but the doctrine of waiver is discretionary. *Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 27 (App. 2017). We decline to find waiver here because Mother agrees the court abused its discretion in failing to order interest and because Father's motion for new trial argued the property allocation was unfair because he could not pay off the debts assigned to him with Mother paying only $400 per month.

¶38 Because the superior court erred by failing to award interest on the equalization judgment unless Mother missed a payment, we vacate the property and debt allocation and remand for reconsideration. On remand, the court may exercise its discretion to reconsider the overall allocation and, as Mother suggests, order a lump sum equalization payment, if possible.

## V. *Support for the Findings Regarding Father's Unreasonableness*

¶39 The superior court awarded Mother $15,000 in attorneys' fees under A.R.S. § 25-324(A). The court found Father acted unreasonably because he (1) unilaterally renewed the lease on the marital residence to a third party just days before trial and after Mother requested possession of the house, (2) was inflexible in co-parenting, and (3) requested sole legal decision-making and greater parenting time. We review an award of attorneys' fees for an abuse of discretion. *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 8 (App. 2008).

¶40 Section 25-324(A) authorizes an award of fees after considering the parties' financial resources and "the reasonableness of the positions each party has taken throughout the proceedings." Father argues that the conduct cited by the superior court does not constitute a "legal

---

minimal change in the balances from the time the petition was filed in August 2016 to the time of trial. Thus, the credit card debt owed at the time the petition was filed is presumed to be a community obligation because it was incurred during marriage. *See Hrudka*, 186 Ariz. at 91-92.

position" and was thus not a proper basis for awarding fees under § 25-324. Father also contends he was not unreasonable.

¶41        During the litigation, just days before trial, Father unilaterally renewed the third-party lease on the marital residence after Mother specifically requested possession of the house. Father was aware that possession of this marital asset was in dispute; therefore, renewing the lease during litigation and without Mother's knowledge constitutes taking a legal position, i.e., Mother was not entitled to possession of the marital asset. Similarly, denying Mother's request to attend the child's first day of preschool constituted a legal position that the temporary parenting time orders must be strictly followed. Although Father was strictly following the temporary parenting time order, under these circumstances, the court could view his refusal as unreasonably inflexible, especially given the other examples of Father's inflexibility regarding co-parenting issues. *See Barron v. Barron*, 246 Ariz. 580, 587, ¶ 22 (App. 2018), *vacated in part on other grounds*, 246 Ariz. 449 (2019).

¶42        We agree with Father, however, that his request for sole legal decision-making authority and greater parenting time was not objectively unreasonable given the mutual domestic violence and the prior temporary orders in this case. *See Williams*, 219 Ariz. at 548-49, ¶¶ 10-11 (holding that a party's positions are evaluated by an objective standard of reasonableness). Therefore, this finding is not supported by the evidence. Although the record supports the other findings regarding Father's unreasonableness, we cannot determine how much weight the court placed on any one finding.[7] Accordingly, we vacate the award of attorneys' fees and remand for reconsideration.

    *VI.    Attorneys' Fees and Costs on Appeal*

¶43        Both parties request an award of attorneys' fees on appeal under § 25-324. After considering the parties' financial resources and the reasonableness of their positions, we hold each party shall bear his or her

---

[7]        The court also found Father was unreasonable because he "was motivated by an issue not related to the child's best interests, such as the desire to control Mother and to prove to Mother that Father is in charge." Although Father did not address this finding on appeal, it was improper to base an award of fees on Father's subjective intent. *See Williams*, 219 Ariz. at 549, ¶ 12 (holding that nothing in § 25-324(A) suggests the reasonableness factor be assessed with reference to a party's intentions in taking that position).

own fees on appeal. Because we have vacated and remanded the child support orders, property allocation, and attorneys' fee award, Father is entitled to his costs on appeal under A.R.S. § 12-342(A), upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶44** Father was not deprived of due process, and we affirm the legal decision-making and parenting time orders. We reverse the child support orders and remand for reconsideration of the income attributed to Father. We vacate the property allocation and award of attorneys' fees and remand for reconsideration.

