[Nos. 48204–7, 48245–4. En Banc. November 10, 1982.]

*In the Matter of the Marriage of* ARCHIE LEE BROWN, *Appellant, and* CHARLOTTE BROWN, *Respondent.*

*In the Matter of the Marriage of* RONALD WAYNE WONDERS, *Appellant, and* ELENORE GERTRUD WONDERS, *Respondent.*

*Talbot, Orlandini & Waldron,* by *Charles W. Talbot,* for appellant Brown.

*Peter H. D. McKee, Michael J. Slish, Patrick Henry McIntyre,* and *McIntyre & Tarutis,* for appellant Wonders.

*William H. Griffies,* for respondent Brown.

*Frederick O. Frohmader* and *Frohmader & Associates,* for respondent Wonders.

*Andrew M. Walkover* and *Alan Kirtley,* amici curiae for respondents.

DOLLIVER, J.—The Brown and Wonders marriages were dissolved in 1979 and 1977, respectively. Both contained property settlements which included a division of military retired pay. These property settlements were stipulated to by the parties and were unappealed. In Washington unappealed property settlements are immune from modification. *Thompson v. Thompson*, 82 Wn.2d 352, 510 P.2d 827 (1973). RCW 26.09.170.

Ordinarily, this would be the end of the litigation. However, on June 26, 1981, the United States Supreme Court handed down its decision in *McCarty v. McCarty,* 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728 (1981). The Court held federal law preempted and thus state courts were precluded from dividing military retired pay in property settlements under their own community property laws.

Plaintiff Ronald Wonders petitioned for the dissolution decree in his case to be modified so that subsequent to the date of *McCarty* he would receive 100 percent of his military retired pay. Plaintiff Archie Brown petitioned that the full amount of the military retired pay be paid to him as of the date of his decree of dissolution. In both instances the trial court denied the petitions. We affirm.

Plaintiffs make two arguments: (1) Because of *McCarty,* the trial court lacked subject matter jurisdiction over military retired pay and therefore the disposition of the military retired pay was void. This being so the judgments are void and subject to collateral attack. CR 60(b). (2) Even if there was subject matter jurisdiction, *McCarty* should be applied retroactively. We disagree with both of these propositions.

■ Turning first to the issue of subject matter jurisdiction, defendants claim a pre-*McCarty* retired pay division should be regarded as an error of law rather than a lack of subject matter jurisdiction and this is not open to collateral attack. We believe this position is valid. *See Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 69 L. Ed. 2d 103, 101 S. Ct. 2424 (1981); *Ex Parte Gaudion,* 628 S.W.2d 500 (Tex. Ct. App. 1982); for cases where collateral attack on a

judgment was allowed, *cf. Kalb v. Feuerstein,* 308 U.S. 433, 84 L. Ed. 370, 60 S. Ct. 343 (1940) (bankruptcy case where a state court disregarded federal law and allowed a foreclosure of real property *after* a bankruptcy petition was on file); *United States v. United States Fid. & Guar. Co.,* 309 U.S. 506, 84 L. Ed. 894, 60 S. Ct. 653 (1940) (the Court had no power to render a division in the *type* of suit brought— in this case a cross claim brought against an Indian nation). There is nothing in *McCarty* to suggest pre–*McCarty* courts have been divested of jurisdiction over military retired pay. *See Erspan v. Badgett,* 659 F.2d 26 (5th Cir. 1981). Furthermore, while a state court is preempted from dividing military retired pay, there is nothing in *McCarty* which prevents state courts from considering it as a factor within the totality of circumstances surrounding dissolution. *In re Marriage of Dessauer,* 97 Wn.2d 831, 650 P.2d 1099 (1982). In Washington, courts in dissolutions are required to look at all property, community and separate, and consider all relevant factors, including:

> The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

RCW 26.09.080(4). After doing this, all that is required is the court make a disposition "as shall appear just and equitable".

 Even if we were to find there was no subject matter jurisdiction, in the conflict between the principles of finality in judgments and the validity of judgments, modern judicial development has been to favor finality rather than validity. Moore, *Collateral Attack on Subject Matter Jurisdiction: A Critique of the Restatement (Second) of Judgments,* 66 Cornell L. Rev. 534 (1981). *See also* Restatement (Second) of Judgments § 12, comments *a–c* (1982) where the principles of validity and finality are thoroughly discussed. We believe the appropriate test to be followed in contesting subject matter jurisdiction is set

forth in Restatement (Second) of Judgments § 12 (1982):

> When a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court's subject matter jurisdiction in subsequent litigation except if:
> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

When the circumstances in this case are measured against the principles in section 12, the parties are precluded from contesting the issue of subject matter jurisdiction before the court.

 We now consider whether *McCarty* should be applied retroactively to the cases before us. The factors to be considered in determining whether to apply a rule retroactively or prospectively were set forth in *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 546 P.2d 81 (1976), which relied on the test for retroactivity articulated by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971). To determine retroactivity in civil suits three factors are to be considered:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the ineq-

uity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Taskett,* at 448.

■ We believe in the cases before us all the criteria for nonretroactivity have been met. The parties and the trial courts here relied on what they believed to be the ability of our courts to divide military retired pay in a dissolution proceeding and on the requirement that in making a property division all of the property of the parties was to be considered. RCW 26.09.080; *Payne v. Payne,* 82 Wn.2d 573, 512 P.2d 736 (1973). The Supreme Court in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 583, 59 L. Ed. 2d 1, 99 S. Ct. 802 (1979) stated the question is whether state law "conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." There is nothing in *McCarty* to suggest the particular federal preemption of state community property laws by federal military retirement statutes announced in that case was prefigured in previous cases.

From our review of the federal interests involved in military retired pay, we do not believe the denial of retrospective application will adversely affect these interests. *See In re Marriage of Sheldon,* 124 Cal. App. 3d 371, 378–79, 177 Cal. Rptr. 380 (1981). The Supreme Court has stated the military retirement system was enacted by Congress

to accomplish two major goals: to provide for the retired service member, and to meet the personnel management needs of the active military forces.

*McCarty,* at 232–33. As to the first goal, these are unappealed orders. If either plaintiff had believed he was not properly provided for and that the property disposition was not "just and equitable", he could have appealed. Neither chose to do so. They cannot now claim otherwise. The second congressional goal of personnel management of the

active forces is not affected. Past actions which do not apply to future retirees cannot serve as a negative influence on "enlistment and re-enlistment, to create an orderly career path, and to ensure 'youthful and vigorous' military forces." (Footnote omitted.) *McCarty,* at 234. Only future attempts to divide military retired pay would have any effect on this goal and these, of course, have been forbidden.

As to the final factor in the test, we believe the injustice or hardship which would result from applying *McCarty* retroactively far exceeds the injustice or hardship which might occur from prospective application. The words of *In re Marriage of Sheldon,* 177 Cal. Rptr. at 384, are applicable in this state as well as in California:

> While review of the first two factors identified in *Huson's* discussion of retroactivity does not indicate *McCarty should* be accorded retroactive effect, examination of the third factor—the potential for injustice and hardship—convinces us the Court's decision *should not* be applied to judgments which were final before *McCarty* was filed. In perhaps no other area of law is the need for stability and finality greater than marriage and family law. Without guessing as to how our society may structure future social relationships (cf. *Marvin v. Marvin* (1976) 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106), at this stage of our societal development, marital dissolution is almost by definition a mentally, emotionally, and often physically disruptive experience for the parties involved. Divorce inevitably requires old plans be abandoned, new plans made, and perceptions altered to conform to a changed reality. To permit and in fact encourage the relitigation of property interests long after the issues were supposedly settled would merely serve to reopen old wounds and create new ones. There is no guarantee that the non-service member spouse would have assets sufficient to reimburse the service member for that portion of the pension rights which had previously been an awarded share of community property. Substantial hardship would result in cases where the non-member relied on the property settlement in converting his or her share into non-liquid assets. Moreover, a reallocation of property interests would likely constitute sufficient "changed

circumstances" to trigger a second round of relitigation involving spousal support awards. (See generally, *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633, 120 Cal.Rptr. 654; *Verner v. Verner* (1978) 77 Cal.App.3d 718, 727, 143 Cal.Rptr. 826; but cf. *In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 860–861, 137 Cal.Rptr. 670.) We also note the immense burden on the administration of justice in our civil courts were such relitigation permitted.

(Footnote omitted.)

We hold *McCarty* does not apply retroactively to the property settlements in these cases. In both cases the unappealed property settlements remain in force and the trial court is affirmed. The request by defendant Wonders for attorney fees is remanded to the trial court.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.