# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>ANDREW OTTO WEISER,<br><br>          Appellant/Cross-Respondent,<br><br>and<br><br>MICHELLE RENEE WEISER,<br><br>          Respondent/Cross-Appellant. | No. 51615-2-II<br>(consolidated with No. 53581-5-II)<br><br><br><br><br>PUBLISHED OPINION |

CRUSER, J. - Andrew[1] Weiser appeals a superior court order granting his former wife Michelle Weiser's motion to enforce the property distribution agreement (Agreement) incorporated into the couple's dissolution decree and awarding Michelle attorney fees based on need and ability to pay. The Agreement awarded Michelle a portion of Andrew's military retirement. Post-dissolution, Andrew elected to receive disability in lieu of retirement and unilaterally reduced the amount of military retirement pay he was paying Michelle despite a clause in the Agreement stating, "In the event the husband's military retirement benefit shall be reduced or offset by disability pay, such a reduction shall not reduce the amount the wife is entitled to receive each month under the terms of this order." Clerk's Papers (CP) at 8.

---

[1] Because Andrew and Michelle Weiser have the same last name, we refer to them by their first names for clarity.

Andrew argues that the superior court erred in enforcing the Agreement because the Uniform Services Former Spouses' Protection Act[2] (USFSPA), and *Howell v. Howell*, ___ U.S. ___, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017), prohibit distribution of military disability pay in lieu of retirement or indemnification for reductions in the amount of retirement caused by the election of disability in lieu of retirement. He also challenges the superior court's interpretation of the terms of the Agreement.

Michelle cross-appeals a superior court commissioner's order denying the CR 60(b)(11) motion that she filed during the pendency of this appeal. In this motion, Michelle sought to vacate portions of the dissolution decree related to the disability waiver, to establish nonmodifiable maintenance, and to address issues related to Andrew's alleged failure to complete a survivor beneficiary designation required by the Agreement.

We hold that under the doctrine of res judicata Andrew cannot, through a response to a motion to enforce an agreement that he had not followed, reopen the Agreement as adopted in the dissolution decree and challenge the validity of that decree. We further reject Andrew's challenge to the superior court's interpretation of the Agreement. Accordingly, we affirm the superior court's order enforcing the decree and the Agreement.

In light of this decision, we also affirm the denial of Michelle's CR 60 motion to vacate the dissolution decree. But because the superior court commissioner never addressed the survivor beneficiary designation issue that Michelle also raised in her CR 60 motion, we remand to the commissioner for consideration of that remaining issue.

---

[2] 10 U.S.C. §1408.

FACTS

I. DISSOLUTION AND NEGOTIATED PROPERTY DISTRIBUTION AGREEMENT

Andrew and Michelle married in May 1992, and separated in March 2010. Andrew retired from the United States Army on October 1, 2010, after 20 years of service.

The marriage was dissolved in February 2011.The decree of dissolution divided Andrew and Michelle's assets and liabilities as set out in their negotiated Agreement, which the superior court incorporated by reference into the dissolution decree. The decree also awarded Michelle maintenance for 42 months.

In the section addressing the property awarded to Andrew, the Agreement provided, in part,

• *Wife will receive 50% of the community property portion of the military retirement account in the husband's name.*[3] The community property portion shall be defined as the contributions and interest thereon from the date of marriage until the date of separation.

• At retirement, husband shall elect the survivor benefit plan for his military retirement and name the wife as a beneficiary. Wife shall receive benefits at a level that is no less than the amount of monthly retirement she is entitled to receive under the terms of this order.

• *In the event the husband's military retirement benefit shall be reduced or offset by disability pay, such a reduction shall not reduce the amount the wife is entitled to receive each month under the terms of this order.*

CP at 8 (emphasis added). In addition, a separate section of the Agreement awarded Michelle various property, including, "[o]ne-half of the community property portion of the military retirement account in the husband's name." *Id.* at 9.

---

[3] Andrew and Michelle were married for 18 years of Andrew's 20 years of service, so the community property portion of the military retirement account was 90 percent. Thus, 50 percent of the community property portion is 45 percent.

## II. DISABILITY PAY AND *HOWELL*

Andrew began receiving military retirement pay in October 2010. Andrew later asserted that he initially paid Michelle $581.01 a month, but he eventually determined that he should have paid her more.

According to Andrew, his military retirement pay was reduced in August 2012, after he obtained a 30 percent disability rating and began receiving disability pay in lieu of a portion of his retirement. Starting that same month, Andrew began paying Michelle one half of the remaining military retirement pay, rather than one half of the original military retirement pay.[4]

In May 2017, more than six years after the superior court entered the original dissolution decree and almost five years after Andrew started receiving his disability in lieu of retirement, the United States Supreme Court issued *Howell*. In *Howell*, the Court held that states are prohibited from increasing the amount a divorced spouse receives each month from a veteran's retirement pay in order to "'reimburse'" or "indemnify the divorced spouse for the loss caused by the veteran's [disability] waiver." 137 S. Ct. at 1402, 1406.

## III. MOTION TO ENFORCE AGREEMENT

On September 20, 2017, more than five years after Andrew started to receive disability pay and unilaterally reduced his payments to Michelle, Michelle moved to enforce the Agreement and to recover the portion of Andrew's military retirement that she believed she was due under the Agreement. Michelle argued that the Agreement was an unambiguous contract requiring Andrew

---

[4] It is unclear from the record exactly how much Andrew should have paid Michelle before and after waiving his retirement pay because he admits that he underpaid Michelle.

to pay a monthly amount that could not be reduced by his decision to receive disability in lieu of retirement and that the superior court should enforce this unambiguous agreement.

Andrew objected to Michelle's motion to enforce the Agreement, arguing that under the USFSPA and *Howell*, he could not be ordered to indemnify Michelle for any reduction in retirement pay created by his disability waiver. He also asserted that when they had negotiated the Agreement, they had considered the fact he might receive disability pay and that Michelle would not be awarded any of his disability income. He stated that they had addressed this contingency by awarding Michelle 100 percent interest in the house.

Andrew also argued that because the Agreement provided for only three years of spousal maintenance, Michelle could not claim additional maintenance or compensatory maintenance. He admitted, however, that regardless of his disability waiver, he had underpaid Michelle due to a calculation error.

Notably, Andrew raised these arguments in his response to Michelle's motion to enforce the Agreement that was adopted by the decree. He did not move under CR 60 to modify or otherwise reopen the decree.

Michelle replied that she and Andrew had agreed "to share the retirement, *including* any amount converted to [disability income]." CP at 73 (emphasis added). She further asserted that they were both aware that there could be a reduction due to disability and that they had "agreed that such a conversion would not reduce [Michelle's] portion." *Id.*

After hearing argument,[5] a superior court commissioner orally ruled that the court would enforce the decree because the "clear and unambiguous language" of the Agreement demonstrated

---

[5] There was no testimony presented at this hearing.

that "the parties intended for [Michelle] to receive the amounts indicated." 1 Report of Proceedings (RP) at 9. The commissioner directed the parties to reach an agreement on the amounts owed. The commissioner also granted attorney fees to Michelle based on her need and Andrew's ability to pay.

The commissioner subsequently entered a "Military Retirement Order" ordering Andrew continue to pay Michelle directly "45% of the marital portion of his *retirement* pay until such time as the payments are made directly by the military" and "to continue to name [Michelle] as the irrevocable beneficiary of his survivor benefit plan" or to reinstate her as the irrevocable beneficiary. CP at 637 (sealed document) (emphasis added). Notably, the Military Retirement Order required Andrew to continue to pay 45 percent of the *retirement* pay to Michelle and did not require the direct payment of any portion of Andrew's disability pay.

The Military Retirement Order also provided that Andrew "shall not take any further action which would defeat, reduce or limit [Michelle's] right to receive her share of [Andrew's] military pension benefits, including merging retired pay with other pensions or waiving any portion of retired pay in order to receive disability pay." *Id.* at 639 (sealed document). It provided that in the event Andrew breached this provision, he "shall indemnify and pay directly to [Michelle] any sums reduced by such action." *Id.* It further provided that the court "retain[ed] jurisdiction" to award Michelle "permanent non-modifiable maintenance" to replace the reduction in retirement earnings. *Id.* The order also stated that it was intended to "qualify under the [USFSPA], 10 U.S.C. §1408" and that "[a]ll provisions shall be interpreted to make the order qualify." *Id.*

It appears that the commissioner also issued a separate order that included a $21,000 judgment in Michelle's favor to compensate her for "the back debt" or "underpayment" and to pay

$5,000 of Michelle's attorney fees.[6] *See id.* at 89. The parties apparently negotiated the amount of the "underpayment" and the attorney fees, but the record on appeal does not show what portion of this judgment, if any, related to Andrew's reduction in retirement pay. *Id.*

IV. ANDREW'S MOTION FOR REVISION

Andrew moved to revise the commissioner's decision, including the $21,000 judgment. At the hearing on the motion for revision, Andrew argued that the language in the Agreement was "indemnification or reimbursement language prohibited under [*Mansell v. Mansell*, 490 U.S. 581, 587, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989)] and [the] *Howell* case." 2 RP at 14. In an oral ruling, the superior court refused to revise the commissioner's ruling, concluding that *Howell* did not apply because the parties had "both negotiated [the] agreement." *Id.* at 25.

The superior court also refused to revise the commissioner's attorney fees award and awarded additional attorney fees related to the motion to revise to Michelle based on her need and Andrew's ability to pay and the "significant disparity in income between the two parties." *Id.* The superior court issued a judgment and order denying the motion for revision.

The superior court's March 2, 2018 judgment and order denying the motion for revision included the following written findings of fact:

(a)     The parties reached an agreement to divide all of their property, pay maintenance, and pay child support.

(b)     The terms of their agreement were included in an attachment to the decree of dissolution and were adopted by the court.

(c)     By the terms of the agreement, the parties had anticipated that the husband would retire from the military and could, at some point in his life, waive a portion of his military retired pay and convert it to VA benefits.

---

[6] This order is not part of the appellate record.

7

(d)     *By the terms of their agreement, the husband agreed to reimburse the wife for any sum that she lost due to the waiver.* He failed to do so.

(e)     The Respondent filed a Motion for Judgment, Entry of Order Dividing Military Pension, and for Attorney Fees.

(f)     The Petitioner did not transfer to Respondent 45% of his disposable retired pay plus 45% of any future VA waiver amount.

(g)     The agreement of the parties adopted by the court in the decree is unambiguous. The court will not go outside the four corners.

. . . .

(j)     The agreement of the parties does not require the military to take any actions, including payment of any funds, in violation of federal laws and regulations.

CP at 96-97 (italics omitted) (emphasis added).

Andrew appealed the March 2, 2018 judgment and order. In his opening appellate brief, Andrew asserted that Michelle should have sought relief through a CR 60 motion rather than a motion to enforce the contract.

V. MICHELLE'S CR 60(B)(11) MOTION AND CROSS APPEAL

Apparently in response to Andrew's opening appellate brief, Michelle filed a CR 60(b)(11) motion asking the court to modify or clarify the dissolution decree.[7] Michelle also asserted that Andrew had failed to designate her as the beneficiary of the military retirement survivor benefit.

Michelle asked the court to "vacate the provisions of the decree of dissolution regarding maintenance, attorney fees, and any reference to the requirement that Andrew reimburse [Michelle] for any VA waiver amount" and to award her monthly, nonmodifiable lifetime maintenance to compensate her for her share of Andrew's retirement and his failure to designate

---

[7] CR 60(b) provides, in part, "On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (11) Any other reason justifying relief from the operation of the judgment."

8

her as the beneficiary of the survivor benefit. *Id.* at 534. Alternatively, she argued that if Andrew were to designate her as beneficiary of the survivor benefit, she should receive a slightly lower monthly lifetime nonmodifiable maintenance. She also requested attorney fees.

The commissioner heard argument on Michelle's CR 60 motion.[8] Acknowledging that Andrew's pending appeal prevented her oral ruling from having any effect unless this court gave her permission to enter the order, the commissioner orally ruled that there was no basis to vacate the dissolution decree because the Agreement had been incorporated into the dissolution decree, the Agreement was "detailed and specific," and the "intent" of the agreement was "clear." RP (Apr. 4, 2019) at 23. The commissioner's oral ruling did not address the survivor benefit designation issue.

After we granted permission, the commissioner entered a written order denying Michelle's CR 60 motion and both parties' requests for attorney fees. The written order did not explain any of the commissioner's reasoning or mention the survivor benefit beneficiary designation.

Michelle appealed the order denying her CR 60 motion. We consolidated Michelle's appeal with Andrew's appeal and advised Michelle that her appeal would be considered as a cross appeal.

At our request, the parties provided supplemental briefing addressing whether res judicata prevents the reopening of the decree of dissolution or the settlement agreement in this case.

---

[8] No testimony was presented at this hearing.

9

ANALYSIS

I. DEVELOPMENT OF THE LAW

A. FEDERAL LAW AND RELATED CALIFORNIA CASE LAW

1. *MCCARTY* AND THE USFSPA

In 1981, the United States Supreme Court held in *McCarty v. McCarty*, that under the Supremacy Clause of the United States Constitution[9] federal law precluded state courts from dividing military retirement pay under state community property or equitable distribution laws. 453 U.S. 210, 211, 235, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981). In 1982, Congress enacted the USFSPA in response to *McCarty*. Former 10 U.S.C. 1408 (c)(1) (1982); *Howell*, 137 S. Ct. at 1403.

The USFSPA allowed state courts to consider "disposable retired . . . pay" as community or marital property. Former 10 U.S.C. 1408 (c)(1); *Howell*, 137 S. Ct. at 1403. The USFSPA defined "'disposable retired . . . pay,'" as "the total monthly retired . . . pay to which a member is entitled (*other than the retired pay of a member retired for disability under chapter 61 of this title*)." Former 10 U.S.C. 1408(a)(4) (emphasis added).[10]

2. *MANSELL*

In 1989, the Supreme Court issued *Mansell*, which addressed the definition of "disposable retired pay" under the USFSPA. 490 U.S. at 589. In *Mansell*, the parties entered into a property settlement as part of their divorce decree. *Id.* at 585-86. The property settlement provided that the

---

[9] The Supremacy Clause establishes that the Constitution and all federal laws enacted under the Constitution are the "supreme Law of the Land." U.S. Const. art. VI, cl. 2.

[10] Recent amendments to the statute renumbered the waiver provision. It is now codified at 10 U.S.C. §1408(a)(4)(A)(ii).

husband would pay the wife 50 percent of his total military retirement pay, including the portion of his retirement pay that he had waived in order to receive disability benefits. *Id.*

Four years later, the husband moved to modify the divorce decree to remove the provision requiring him to split his total retirement pay with the wife. *Id.* at 586. The Supreme Court held that since the USFSPA expressly excluded disability compensation from the definition of disposable retired pay, any portion of military retirement pay that was waived to obtain disability benefits could not be treated as community or marital property and must, instead, be treated as separate property. *Id.* at 594-95.

The Supreme Court did not discuss possible remedies available to the wife; it merely reversed the judgment and remanded the matter "for further proceedings not inconsistent with [the Court's] opinion." *Id.* at 594. But the Supreme Court included the following footnote:

> In a supplemental brief, Mrs. Mansell argues that the doctrine of res judicata should have prevented this pre-*McCarty* property settlement from being reopened. The California Court of Appeal, however, decided that it was appropriate, under California law, to reopen the settlement and reach the federal question. *Whether the doctrine of res judicata, as applied in California, should have barred the reopening of pre-McCarty settlements is a matter of state law over which we have no jurisdiction.* The federal question is therefore properly before us.

*Id.* at 586 n.5 (internal citations omitted) (emphasis added). This footnote establishes that res judicata can prevent the reopening of the property settlement and that res judicata is a matter of state law.

On remand to the state court, the California Court of Appeal affirmed the trial court's denial of the motion to vacate and modify the judgment. *In re Marriage of Mansell*, 217 Cal. App. 3d 219, 236, 265 Cal. Rptr. 227 (1989). The court addressed the husband's argument that the judgment at issue was void for lack of subject matter jurisdiction and held that although *McCarty* preempted

state community property law, it did not deprive the trial court of subject matter jurisdiction. *Id.* at 227, 229, 235.

The court discussed whether the decree was in excess of the superior court's jurisdiction and, therefore, should have been vacated or whether res judicata applied. *Id.* at 229, 234-35. It held that "a judgment entered contrary to substantive law does not fall to the level of being in excess of the trial court's jurisdiction" and that there was no ground to reopen the settlement. *Id.* at 229.

The court clarified that, despite the Supreme Court's assertion that the California Court of Appeal had determined that it was appropriate under California law to reopen the settlement and reach the federal question, this was not, in fact, what had occurred. *Id.* at 224-25. The court stated that it had *not* reopened the judgment but that it had merely "addressed the federal question *only* to demonstrate there was no basis for reopening the settlement." *Id.* at 225, 235. The court further stated that the determination of whether the court could reopen the settlement "was one of state law, although our rationale for reaching it involved resolution of a federal question." *Id.* at 225, 235.

Ultimately, the California Court of Appeal refused to reopen the judgment. *Id.* at 235. Thus, the court held that res judicata barred relief for the husband. Notably, the United States Supreme Court denied certiorari of that decision. *Mansell v. Mansell*, 498 U.S. 806 (1990).

3. *HOWELL*

Over time, it became apparent that there was a split of state-law authority regarding whether the Supreme Court's *Mansell* decision and the USFSPA allowed the veteran spouse to indemnify the divorced spouse for the loss of the divorced spouse's portion of the veteran's retirement pay caused by the receipt of service-related disability benefits. *Howell*, 137 S. Ct. at

1404-05. In 2017, 28 years after the Supreme Court issued *Mansell*, the Supreme Court resolved the indemnification issue in *Howell*.

The Howells divorced in 1991, and the dissolution decree awarded the wife 50 percent of the husband's military pension, with no mention of any indemnification should the husband's military pension change post-dissolution. *Id*. at 1404. The husband began receiving military retirement benefits in 1992. *Id*. Thirteen years later, the husband received a disability rating of 20 percent and elected to receive disability compensation in lieu of retirement, significantly reducing the wife's portion of the retirement benefits. *Id*.

The wife sought enforcement of the original decree, and the trial court ordered the husband to "'reimburse'" the wife for the reduction in her share of his military retirement pay due to his disability election. *Id.* (quoting *In re Marriage of Howell*, 238 Ariz. 407, 410, 361 P.3d 936, 939 (2015)). The husband appealed. *Id*.

The Arizona Supreme Court affirmed the trial court, holding that the Supreme Court's decision in *Mansell* did not control the case because the husband "made his [disability] waiver after, rather than before, the family court divided his military retirement pay." *Id*. Noting that other state courts had come to different conclusions on similar matters, the Supreme Court accepted review. *Id.* at 1404-05.

The Supreme Court addressed whether "the State [can] subsequently increase, pro rata, the amount the divorced spouse receives each month from the veteran's retirement pay in order to indemnify the divorced spouse for the loss caused by the veteran's [disability] waiver." *Id.* at 1402. The Court held that because federal law pre-empts the states from treating waived military retirement pay as divisible community property, state courts cannot order veterans to indemnify

their divorced spouses for any reduction in the divorced spouse's portion of the veteran's retirement pay caused by the veteran's receipt of disability in lieu of retirement.[11] *Id.* at 1402.

The *Howell* court further stated,

Neither can the State avoid [the Supreme Court's decision in] *Mansell* by describing the family court order as an order requiring [the husband] to "reimburse" or to "indemnify" [the wife], rather than an order that divides property. The difference is semantic and nothing more. The principal reason the state courts have given for ordering reimbursement or indemnification is that they wish to restore the amount previously awarded as community property, i.e., to restore that portion of retirement pay lost due to the postdivorce waiver. And we note that here, the amount of indemnification mirrors the waived retirement pay, dollar for dollar. *Regardless of their form, such reimbursement and indemnification orders displace the federal rule and stand as an obstacle to the accomplishment and execution of the purposes and objectives of Congress. All such orders are thus pre-empted.*

*Id*. at 1406 (emphasis added).

Acknowledging the harsh effect that the inability to indemnify could have on the former spouse, the Court stated,

We recognize, as we recognized in *Mansell*, the hardship that congressional pre-emption can sometimes work on divorcing spouses. *See* 490 U.S., at 594, 109 S. Ct. 2023. But we note that a family court, when it first determines the value of a family's assets, remains free to take account of the contingency that some military retirement pay might be waived, or, as the petitioner himself recognizes, take account of reductions in value when it calculates or recalculates the need for spousal

---

[11] The Court also commented that the wife's "interest in the waivable portion" of the veteran's retirement pay could not be considered "'vested'" because that interest was "at most, contingent" since it was dependent on a subsequent condition, namely the husband's possible waiver of the retirement pay and the state court could not "'vest' that which (under governing federal law) they lack the authority to give." *Howell*, 137 S. Ct. at 1405-06. But the property agreement in *Howell* did not include language similar to the language in the Weisers' agreement, which stated that if Andrew elected disability, any reduction "shall not reduce the amount the wife is entitled to receive each month under the terms of th[e] order." CP at 8. Thus, although *Howell* establishes that Michelle did not have a vested interest in the waivable portion of Andrew's benefits, *Howell* does not address whether Michelle had a vested interest in the income stream guaranteed in the property distribution agreement.

14

support. *See Rose v. Rose*,[12] 481 U.S. 619, 630-634, and n. 6, 107 S .Ct. 2029, 95 L. Ed. 2d 599 (1987); 10 U.S.C. § 1408(e)(6).[13]

*Id.* at 1406.

The Court did not address whether *Howell* was retroactive or whether *Howell* negated the footnote 5 in its *Mansell* decision.

B. RELATED WASHINGTON LAW

In 2001, after the Supreme Court's *Mansell* decision but before *Howell*, we addressed the division and distribution of a veteran's disability pension in *Perkins v. Perkins*, 107 Wn. App. 313, 26 P.3d 989 (2001). *Perkins* was a direct appeal from the dissolution order. 107 Wn. App. at 317.

In *Perkins*, the trial court ordered the military spouse to pay the civilian spouse the same amount as her lost share of his retired pay, as "permanent compensatory spousal maintenance." *Id.* at 317 (emphasis omitted). Foreshadowing *Howell*, we held that the Supreme Court's *Mansell* decision prohibited any order for "dollar-for-dollar" reimbursement of the lost retired pay, even if it was labeled "'maintenance.'" *Id.* at 324, 327.

---

[12] *Rose* distinguishes the court's ability to reach certain federal benefits when establishing spousal and child support from considering such benefits for the purpose of community property divisions. 481 U.S. at 630-634, and n.6.

[13] 10 U.S.C § 1408(e)(6) provides:
> Nothing in this section shall be construed to relieve a member of liability for the payment of alimony, child support, or other payments required by a court order on the grounds that payments made out of disposable retired pay under this section have been made in the maximum amount permitted under paragraph (1) or subparagraph (B) of paragraph (4). Any such unsatisfied obligation of a member may be enforced by any means available under law other than the means provided under this section in any case in which the maximum amount permitted under paragraph (1) has been paid and under section 459 of the Social Security Act (42 U.S.C. 659) in any case in which the maximum amount permitted under subparagraph (B) of paragraph (4) has been paid.

But we further held that a "dissolution court . . . may consider a spouse's entitlement to an undivided veteran's disability pension . . . as one factor relevant to an award of maintenance . . . , provided of course that [the court] follows the usual state-law rules." *Id.* at 322-23 (emphasis omitted) (footnotes omitted). In other words, "a trial court may award maintenance after considering all relevant factors, of which a military disability pension may be one." *Id*. at 327. We "reverse[d] and vacate[d] the property, debt, and maintenance parts of the dissolution decree," affirmed the rest of the decree, and "remand[ed] for redistribution of property and debts, and for reconsideration of maintenance." *Id*.

## II. ANDREW'S APPEAL

Andrew argues that under the Supreme Court's *Mansell* and *Howell* decisions, and *Perkins*, 107 Wn. App. 322-23, the superior court erred when it granted Michelle's motion to enforce and ordered him to reimburse and indemnify Michelle for her share of the portion of his military retirement pay that was reduced by his receipt of disability in lieu of retirement. He further argues that the superior court erred when it concluded that he had agreed to reimburse Michelle for any amount she lost due to the disability waiver. Michelle responds that *Howell* does not prohibit indemnification because she was seeking to enforce a negotiated contractual agreement and *Howell* applies only to property divisions imposed by the court.

At our request, the parties provided supplemental briefing addressing whether res judicata prevents the reopening of the decree of dissolution or the settlement agreement in this case. We hold that the res judicata issue is dispositive and that the superior court properly concluded that the Agreement required Andrew to reimburse Michelle for any amount she lost due to the disability

16

waiver. We further hold that the superior court did not err when it concluded that Andrew had agreed to reimburse Michelle for any amount she lost due to the disability waiver.

A. RES JUDICATA

1. LEGAL PRINCIPLES

We review de novo a superior court order on a motion to enforce in which the superior court has not taken any evidence. *Kwiatkowski v. Drews*, 142 Wn. App. 463, 479, 176 P.3d 510 (2008). Additionally, "[w]hether res judicata bars an action is a question of law [this court] review[s] de novo." *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009).

> The doctrine of res judicata or claim preclusion ensures finality of judgments. *Marino Property Co. v. Port Comm'rs*, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982). Once a judgment is final, a court may reopen it only when specifically authorized by statute or court rule. *See Lejeune v. Clallam [County]*, 64 Wn. App. 257, 269, 823 P.2d 1144, *review denied*, 119 Wn.2d 1005, 832 P.2d 488 (1992). CR 60 sets forth the general conditions under which a party may seek relief from judgment. [Chapter] 26.09 [RCW], which governs dissolution actions, sets forth additional grounds applying solely to such actions. *See In re Marriage of Timmons*, 94 Wn.2d 594, 597-99, 617 P.2d 1032 (1980).

*In re Marriage of Shoemaker*, 128 Wn.2d 116, 120, 904 P.2d 1150 (1995).

"The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit." *Ensley*, 152 Wn. App. at 899. "Res judicata applies where the subsequent action involves (1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made as did a prior adjudication."[14] *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011) (citing *In re Estate of Black*, 153 Wn.2d 152, 170, 102 P.3d 796 (2004)).

> A trial court does not have the authority to modify even its own decree in the absence of conditions justifying the reopening of the judgment. RCW

---

[14] Neither Andrew nor Michelle address these four factors.

> 26.09.170(1); *Kern v. Kern*, 28 Wn.2d 617, 619, 183 P.2d 811 (1947). An ambiguous decree may be clarified, but not modified. RCW 26.09.170(1); *In re Marriage of Greenlee*, 65 Wn. App. 703, 710, 829 P.2d 1120, *review denied*, 120 Wn.2d 1002, 838 P.2d 1143 (1992). A decree is modified when rights given to one party are extended beyond the scope originally intended, or reduced. A clarification, on the other hand, is merely a definition of rights already given, spelling them out more completely if necessary. *Rivard v. Rivard*, 75 Wn.2d 415, 418, 451 P.2d 677 (1969).

*In re Marriage of Thompson*, 97 Wn. App. 873, 878, 988 P.2d 499 (1999).

2. ANDREW'S SUPPLEMENTAL RES JUDICATA ARGUMENT

Andrew does not dispute that the four res judicata factors exist. Instead, he contends that because the USFSPA preempts state law, the superior court had no authority to award Michelle any military disability benefits, even by agreement, and therefore, the superior court lacked subject matter jurisdiction and the order awarding Michelle military benefits was void *ab initio* and cannot be res judicata.[15] Our Supreme Court's decision in *In re Marriage of Brown*, 98 Wn.2d 46, 653 P.2d 602 (1982),[16] disposes of Andrew's jurisdictional argument.

"The critical concept in determining whether a court has subject matter jurisdiction is the 'type of controversy.'" *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 316, 76 P.3d 1183 (2003) (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)). "'If the type of controversy is within the subject matter jurisdiction, then all other defects or errors

---

[15] Michelle contends that this argument does not address the res judicata issue and that this is a "newly-minted" jurisdictional argument that we should "disregard." Second Suppl. Br. of Resp't at 3, 7. Because Andrew's jurisdictional argument pertains to the validity and finality of the dissolution decree, which is relevant to res judicata, we address his argument. *See Ensley*, 152 Wn. App. at 899 ("The threshold requirement of res judicata is a valid and final judgment on the merits in a prior suit.").

[16] Neither party cites to *Brown*.

go to something other than subject matter jurisdiction.'" *Id.* (internal quotation marks omitted) (quoting *Marley*, 125 Wn.2d at 539).

Superior courts are courts of general jurisdiction and "have long had the 'power to hear and determine all matters, legal and equitable, . . . except in so far as these powers have been expressly denied.'" *In re Marriage of Major*, 71 Wn. App. 531, 533-34, 859 P.2d 1262 (1993) (alteration in original) (quoting *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 94, 172 P. 257 (1918)). The superior courts are granted broad subject matter jurisdiction by article 4 § 6 of our state constitution, which states that the superior courts have jurisdiction "in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court." *See also Major*, 71 Wn. App. at 533. Additionally, the superior courts have statutory jurisdiction to hear family law matters, including "the distribution of property or obligations." RCW 26.12.010. In light of this broad constitutional and statutory grant of subject matter jurisdiction, "courts may only find a lack of jurisdiction under compelling circumstances, such as when it is explicitly limited by the Legislature or Congress." *See Major*, 71 Wn. App. at 533-34.

In *Mansell*, the Supreme Court expressly held that the decision of whether to reopen a final settlement or whether that final decision was res judicata was an issue of state law over which the Supreme Court had no jurisdiction. *Mansell*, 490 U.S. at 586 n.5. And, notably, the Supreme Court denied review after the California Court of Appeal later held that the superior court had not reopened the judgment. *Mansell*, 498 U.S. at 806.

Similarly, our Supreme Court's decision in *Brown* establishes that, under state law, errors applying federal legislation in this context are *errors of law* that do not divest Washington courts of subject matter jurisdiction or automatically open its judgments to collateral attack. *Brown*, 98

19

Wn.2d at 48-49; *see also Tarver v. Reynolds*, 2019 WL 3889721 (M.D. Ala. Aug. 16, 2019) (court order) (citing other jurisdictions holding that the USFSPA does not restrict subject matter jurisdiction),[17] *aff'd*, 808 F. App'x.752 (11th Cir. 2020).

In *Brown*, the two appellants argued, similar to Andrew's argument here, that the pre-*McCarty* retirement pay divisions in their respective property settlements were void, and therefore subject to collateral attack, because under *McCarty* the trial court lacked subject matter jurisdiction over military retirement pay. 98 Wn.2d at 48. Our Supreme Court rejected this argument, holding that errors in applying federal legislation are errors of law that do not deprive a court of its jurisdiction or open its judgments to collateral attack. *Id.* at 48-49. Under *Brown*, Andrew's subject matter jurisdiction argument fails.[18]

Courts in other states have also recognized that errors in applying federal legislation are errors of law that do not deprive the state court of subject matter jurisdiction. For instance, *In re Marriage of Williams*, 307 Kan. 960, 417 P.3d 1033 (2018), a case very similar to this one, the

---

[17] *Tarver* cites to two post-*Howell* cases that reject the argument that the USFSPA affects subject matter jurisdiction, *Gross v. Wilson*, 424 P.3d 390, 397 n.34 (Alaska 2018) (holding that the USFSPA and the Supreme Court's *Mansell* decision do not affect subject matter jurisdiction and noting that "[a] majority of state courts that have addressed the issue treat the USFSPA and *Mansell* as a rule of substantive federal law, and not a jurisdictional matter."), and *In re Marriage of Williams*, 307 Kan. 960, 417 P.3d 1033 (2018) (see discussion of this case below).

    *Tarver* also cites to several pre-*Howell* cases: *Moore v. Moore*, 484 S.W.3d 386, 391-92 (Mo. App. W.D. 2016); *Coon v. Coon*, 364 S.C. 563, 614 S.E.2d 616, 617-18 (2005), *cert. denied*, 546 U.S. 1090 (2006); *McLellan v. McLellan*, 33 Va. App. 376, 533 S.E.2d 635, 637 (2000); *In re Marriage of Curtis*, 7 Cal. App. 4th 1, 9 Cal. Rptr. 2d 145, (Ct. App. 1992); *Maxwell v. Maxwell*, 796 P.2d 403, 407 (Utah Ct. App. 1990) (adopting reasoning from California Court of Appeal *Mansell* decision); *Evans v. Evans*, 75 Md. App. 364, 541 A.2d 648, 650-52 (1988); *Konzen v. Konzen*, 103 Wn.2d 470, 693 P.2d 97, *cert. denied*, 473 U.S. 906 (1985).

[18] *Brown* also discussed whether *McCarty* could be applied retroactively and held that it could not. 98 Wn.2d at 50. Here, Andrew, who, as the appellant, has the burden of demonstrating that the trial court's order was improper, does not argue that *Howell* is retroactive.

Kansas Supreme Court concluded in a post-*Howell* case that the USFSPA does not deprive state trial courts of subject matter jurisdiction. The court stated that the Supreme Court's footnote 5 in *Mansell* "implicitly recognized the USFSPA did not limit state court subject-matter jurisdiction" because, "if the [USFSPA] had the effect of depriving a state court of subject-matter jurisdiction, then res judicata would not protect the judgment." *Williams*, 417 P.3d at 1044.

The *Williams* court further noted that on remand the California Court of Appeal expressly rejected the argument that *McCarty* and that the Supreme Court's *Mansell* decision addressed subject matter jurisdiction over retirement or disability pay. *Id*. The Kansas court concluded that "[t]he United States Supreme Court's footnote in *Mansell* and the subsequent proceedings [in the case after remand to the California courts] eliminate 'any remaining possibility that the holdings in *McCarty* and *Mansell* are rules of subject matter jurisdiction," and that "the USFSPA does not deprive a state court of subject-matter jurisdiction." *Id.* (quoting 2 Turner, Equitable Division § 6:6).

Based on the California Court of Appeal's *Mansell* decision, *Brown*, and the persuasive discussion in *Williams*, we hold that the superior court had jurisdiction and, thus, Andrew's argument that a lack of jurisdiction precludes the application of res judicata fails. Because Andrew fails to otherwise assert that res judicata does not apply, we hold that res judicata applies here.

Andrew cites to several cases to support his argument.[19] These cases are not persuasive and do not change our decision.

First, Andrew cites to *Howell*, arguing that *Howell* addresses "whether a state court's order, entered by agreement that divides preempted VA disability benefits is final; and therefore, could not be reopened." Suppl. Br. of Appellant at 6. But *Howell* does not address this issue, nor does it discuss res judicata. Instead, as the Supreme Court did in its *Mansell* decision, the *Howell* court *presumed*, without discussion, that the divorce decree at issue had been reopened in the state court. *See Howell*, 137 S. Ct. at 1406. In *Howell*, unlike in *Mansell*, the assumption that the state court had reopened the case is supported by the Arizona Supreme Court opinion, which held that although the wife originally brought the action as an enforcement action, the resulting order actually "modified the original property disposition terms," and, "[a]s a result, despite [the wife's] request that the family court enforce the decree, the family court necessarily *modified* the initial property disposition terms" under state law. *Howell*, 238 Ariz. at 411 (emphasis added), *reversed*

---

[19] In oral argument, Andrew argued that res judicata does not apply because he is not challenging the original decree and is, instead, appealing only the order enforcing the portion of the original decree, which he asserts was void at its inception. This argument fails.

Because, as discussed above, errors in applying federal legislation are errors of law that do not deprive the state court of subject matter jurisdiction or render a decree void, we view Andrew's claim that the original, unchallenged decree was void at its inception as an impermissible collateral attack on an un-appealed decree. Furthermore, there is nothing in the Agreement adopted by the decree or in the order enforcing the agreement that requires Andrew to pay Michelle from his disability payment. Instead, the decree and the order merely require Andrew to ensure that Michelle receives an amount equal to the 45 percent of Andrew's original retirement pay, it does not specify the source of those payments.

We note that at oral argument Andrew was unable to cite to any authority that allowed an appellant to challenge the validity of a final order by means of a challenge to a motion to enforce the agreement, and he has not since filed any additional authority related to this issue. Accordingly, we reject this argument.

*by Howell*, 137 S. Ct. at 1406. Here, nothing in the superior court's order modified the original property disposition terms, the superior court merely enforced the existing terms.[20]

In addition to not addressing whether the decree had been reopened in the state court, *Howell* does not mention footnote 5 of the Supreme Court's *Mansell* decision. Thus, *Howell* does not address whether orders such as the one here can be final. And since the order at issue in *Howell* was deemed a modification that reopened the original decree, *Howell* does not overrule footnote 5 in the Supreme Court's *Mansell* decision.

Second, Andrew cites to *Sprietsma v. Mercury Marine*, 537 U.S. 51, 123 S. Ct. 518, 154 L. Ed. 2d 466 (2002), for the premise that "when a state court lacks subject matter jurisdiction to enter an order because federal law absolutely preempts it, it is not enforceable." Suppl. Br. of Appellant at 2. *Sprietsma* was an appeal from a court order granting a motion to dismiss a tort action that, unlike here, was not a final order. 537 U.S. at 55. And the case does not discuss res judicata. *Id*. Thus, it is not relevant to this case.

Additionally, although Andrew cites *Sprietsma* to support his assertion that a state court lacks "subject matter jurisdiction to enter an order" if an area of law is preempted by federal law, that premise is not stated anywhere in *Sprietsma*. *See* Suppl. Br. of Appellant at 2. At best, *Sprietsma* demonstrates that if a common law claim is preempted by federal law, there is no *legal basis* for a state common law claim.

Third, Andrew cites *Ridgway v. Ridgway*, 454 U.S. 46, 54, 102 S. Ct. 49, 70 L. Ed. 2d 39 (1981), for the premise that the Supreme Court can correct the state court to the extent the state

---

[20] In fact, Andrew contends in his reply brief that the trial court here did *not* modify the decree and that it, instead, merely enforced the terms of the decree.

court has incorrectly adjudged federal rights, stating that a "'state divorce decree, must give way to conflicting federal law'" under the Supremacy Clause. Suppl. Br. of Appellant at 2-3 (quoting *Ridgway*, 454 U.S. at 55). *Ridgway* addressed whether a husband could change the beneficiary designation in an insurance policy that fell under the Servicemen's Group Life Insurance Act of 1965 (SGLIA) to his second wife despite a "state divorce judgment" that ordered him to maintain life insurance policies for the benefits of his three children. 454 U.S. at 48. After the husband died, the first wife and the second wife both attempted to claim the insurance proceeds. *Id*. The Supreme Judicial Court of Maine held that the SGLIA did not prevent the court from imposing a constructive trust on the insurance proceeds for the benefit of the minor children. *Id*. at 54.

The Supreme Court held that under the SGLIA, the husband had the right to change the beneficiary despite the divorce judgment and that the Court had the ability to "'correct'" the "'state judgment[ ]'" "'to the extent that [it] incorrectly adjudge[d] federal rights.'" *Id.* (quoting *Herb v. Pitcairn*, 324 U.S. 117, 125-26, 65 S. Ct. 459, 89 L. Ed. 789 (1945)). Although *Ridgway* is an example of how federal law can trump a provision of a divorce decree and states that the Supreme Court's "'only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights,'" *Ridgway* does not address res judicata. *Id.* (quoting *Herb*, 324 U.S. at 125-26).

Fourth, Andrew cites to *Kalb v. Feuerstein*, 308 U.S. 433, 439 n.12, 60 S. Ct. 343, 84 L. Ed. 370 (1940), for the premise that the State cannot vest state courts with the power to violate the supreme law of the land and that any attempt to "get around the operation of federal law is subject to collateral attack." Suppl. Br. of Appellant at 3-4. But in *Kalb* the issue was whether an action in bankruptcy, a subject over which the state court had no subject matter jurisdiction, could preclude

a state court action. 308 U.S. at 438-39. *Kalb* addressed the jurisdiction of the state court over a matter related to bankruptcy, which is clearly an area of law outside the state court's jurisdiction. *Id*. Here, in contrast, nothing in the USFSPA relieved the state court of jurisdiction and all we must address is an error of law.

In addition to the above arguments, Andrew comments, apparently in an attempt to establish that an examination of res judicata is not required, that the Supreme Court's *Mansell* decision did not address whether the challenged order was final and could not be reopened or whether the order was therefore res judicata. Andrew is correct that the Supreme Court did not address res judicata, but the Court's failure to address this issue does not imply that res judicata is irrelevant because the failure to address the finality/res judicata issue based on the Court's assumption that the state court had already decided that issue—an assumption that the California Court of Appeal later explained was incorrect. *Mansell*, 490 U.S. at 586 n.5; *Mansell*, 217 Cal. App. 3d at 224-25, 235.

Andrew fails to show that the Agreement adopted in the decree was void at its inception. He also fails to claim that the enforcement action did not involve "(1) the same subject matter, (2) the same cause of action, (3) the same persons or parties, and (4) the same quality of persons for or against whom the decision is made as did a prior adjudication." *Williams*, 171 Wn.2d at 730 (citing *Black*, 153 Wn.2d at 170). Thus, he fails to establish that res judicata does not apply here.

Under the doctrine of res judicata, Andrew could not request that the trial court revisit the property settlement agreement in the absence of a CR 60 motion, and he filed no such motion. *Thompson*, 97 Wn. App. at 878 ("A trial court does not have the authority to modify even its own

decree in the absence of conditions justifying the reopening of the judgment."). Accordingly, we affirm the superior court order granting Michelle's motion to enforce the Agreement.[21]

B. ANDREW'S CHALLENGE TO SUPERIOR COURT'S FINDING

Andrew also appears to argue that "the parties arguably took into account the contingency of Andrew's waiver of retirement and agreed to an offset (the disproportionate share of property) in lieu of going to trial." Opening Br. of Appellant at 10-11. Andrew claims that "the disproportionate share of property" was the award of 100 percent of the interest in the family home and the award of spousal maintenance.[22] *See id.* at 10. In his reply, he further argues that the decree did not demonstrate an intent that he "provide a 'permanent stream of income' to Michelle through payment of VA disability." Reply Br. of Appellant at 17.

We construe these arguments as a claim that the superior court misinterpreted the contract terms when it found that "[b]y the terms of their agreement, [Andrew] agreed to reimburse [Michelle] for any sum that she lost due to the [disability] waiver." CP at 97. The interpretation of

---

[21] To the extent Andrew is also arguing that the trial court could not order the military to pay Michelle a portion of his disability pay, that argument fails because the Military Retirement Order did not order the military to pay Michelle any portion of his disability pay. Instead, the Military Retirement Order required Andrew to pay Michelle 45 percent of his *retirement* pay and to "indemnify and *pay directly* to [Michelle] any sums reduced" by his choice to receive disability pay in lieu of retirement. CP at 639 (sealed document) (emphasis added). Furthermore, the order also stated that it was intended to "qualify under the [USFSPA], 10 U.S.C. §1408" and that "[a]ll provisions shall be interpreted to make the order qualify," so these provisions must be interpreted in a manner consistent with the USFSPA's prohibition against awarding Michelle with any portion of Andrew's disability pay. *Id.*

[22] We note that the record does not support Andrew's assertion that Michelle was awarded a 100 percent interest in the home because the Agreement required the parties to divide any profit or loss from the possible sale of the home, which sale was required if Michelle failed to refinance the home within a specific period of time.

the language of a property settlement agreement is a question of law that we review de novo. *In re Marriage of Gimlett*, 95 Wn.2d 699, 705, 629 P.2d 450 (1981).

Andrew's interpretation of the Agreement would contradict the Agreement's plain language, which expressly states that the amount Michelle was "entitled to receive each month under the terms of th[e] order" would not be reduced if Andrew chose to receive disability in lieu of retirement. CP at 8. This part of the Agreement clearly demonstrates an intent to maintain a consistent stream of income to Michelle.

Andrew also contends that the Agreement did not place any burden on him "to make up for the financial loss resulting from [Defense Finance and Accounting Service's] refusal to enforce the state court order." Reply Br. of Appellant at 17. Although Andrew is correct that the Agreement did not expressly say how he would have to ensure that the reduction in his retirement pay did not reduce the amount Michelle received, Andrew does not cite any authority establishing that such detail was required. The Agreement clearly required Andrew to pay Michelle an amount equal to his retirement benefit without any reduction, the method of how he was to do this was irrelevant. Accordingly, Andrew fails to show that the superior court misinterpreted the contract terms when it found that "[b]y the terms of their agreement, [Andrew] agreed to reimburse [Michelle] for any sum that she lost due to the [disability] waiver." CP at 97.

### III. MICHELLE'S CROSS APPEAL

Michelle argues that if we reverse the superior court order enforcing the Agreement, that we should hold that the superior court commissioner abused her discretion in denying Michelle's CR 60(b)(11) motion to vacate the decree. Because we affirm the superior court order enforcing

the decree, there is no need to remand for the commissioner to address that issue in Michelle's motion to vacate the decree.

Michelle further argues that the commissioner abused her discretion in refusing to address the beneficiary designation issue raised in the CR 60 motion. The commissioner did not address Michelle's separate beneficiary designation issue, so remand of the CR 60 motion back to the commissioner to address the beneficiary designation issue is required.

## IV. ATTORNEY FEES AWARDED BY COMMISSIONER AND SUPERIOR COURT

Andrew argues that the fees that the commissioner and superior court awarded to Michelle should be reversed. But those fees were awarded based on Michelle's need and Andrew's ability to pay, and Andrew presents no argument establishing that the commissioner and superior court's evaluations of those factors were improper. Accordingly, we deny Andrew's request to reverse the fees awarded by the commissioner and the trial court.

## ATTORNEY FEES ON APPEAL

On appeal, Andrew requests attorney fees under RAP 18.1 and RCW 26.09.140 based on the arguable merit of the issues on appeal. Because Andrew's arguments fail, we deny this request.

Michelle requests attorney fees on appeal under RCW 26.09.140 based on her need and Andrew's ability to pay. Michelle filed an affidavit of financial need on November 22, 2019, prior to the original December 3, 2019 oral argument date. *See* RAP 18.1(c). Given the failure of Andrew's arguments and the apparent differences in the parties' respective resources, we grant Michelle's request upon her compliance with RAP 18.1(d).

## CONCLUSION

We hold that under the doctrine of res judicata Andrew cannot, through a response to a motion to enforce an agreement that he had not followed, reopen the Agreement as adopted in the dissolution decree and challenge the validity of that decree. We further reject Andrew's direct challenge to the superior court's interpretation of the Agreement. Accordingly, we affirm the superior court's order enforcing the Agreement.

In light of this decision, we also affirm the denial of Michelle's CR 60 motion to vacate the decree. But because the superior court commissioner never addressed the survivor beneficiary designation issue that Michelle also raised in her CR 60 motion, we remand to the commissioner for consideration of that remaining issue.

CRUSER, J.

We concur:

WORSWICK, J.

SUTTON, A.C.J.

29